CLARK v. MELTON.

1. Under the plea of *nul tiel record* the existence of the judgment sued on is denied, and, being thus denied, its existence can be determined alone by an inspection of the record itself; and, if such inspection shows an omission in the record of any essential feature, it is fatally defective, and no testimony *dehors* the record can supply the omission or cure the defect.

2. A judgment regularly obtained in open court, and prepared by the plaintiff's attorney in proper form for entry, and lodged in the clerk's office, and by such clerk regularly entered on his journal and in his abstract of judgments, but not tested, and the date of signing and entry not written on the margin, and the time of filing not endorsed, is a valid judgment, and has lien from its entry in the abstract of judgments.

3. The judgment is the judicial determination of the rights of the parties, and that being had, the omission by the clerk to sign and date it, and to mark it filed, was a mere irregularity, and may be corrected at any time.

---

Before WITHERSPOON, J., Richland, July, 1882.

The facts are stated in the opinion of this court.

The Circuit decree, omitting its statement, was as follows:

The sole issue before the master was a contest between these two creditors as to priority in the distribution of assets. The master finds and reports as matter of law that the Ann E. Wright judgment is entitled to rank first in the distribution of the assets

of C. D. Melton, deceased. Mary B. Melton, a judgment creditor, excepts to the findings and the report of the master, giving priority to the alleged judgment of Ann E. Wright, and the case came on to be heard, upon said exceptions, at July Term of the court for Richland county. The exceptions are based upon the invalidity of the alleged judgment of Ann E. Wright to rank as a final judgment in the distribution of assets, inasmuch as the writ in debt offered was neither signed nor sealed by clerk, and that the judgment formula offered was not officially signed by clerk, with statement of time when signed and entered, as provided by law.

When the existence of a judgment is put in issue by the plea of *nul tiel record*, it must be proved by the record itself, which is inspected by the court wherein it is, if it be a record of the same court. 2 *Tidd* 942. It has been decided in this State that the act of 1789 does not apply to interlocutory, but only to final judgments, and that reference must be had to the period of the death of intestate to ascertain the rights of conflicting creditors. Does the record offered by Ann E. Wright establish a final judgment, according to law, against C. D. Melton at the time of his death?

In *Miller & Leckie* v. *Jones*, 2 *Spears* 315, speaking of the clerk's assessment, as making plaintiff's chose in action *res judicata*, or a debt of record, ascertained and adjudged, the court say : " Nothing remained but to enter up the written formula of such judgment." This was done within the time required by law, and accordingly the entry by a fiction of law related back to the first day of the term, when the judgment debtor was alive, although dead at the time of the entry. This entry at common law could be made at any time during the next vacation, after the assessment term, and still relate back to the term, except in respect to purchasers. *Dibble* v. *Taylor*, 2 *Spears* 308. In *McIntosh* v. *Wright, Rich. Eq. Cas.* 385, the judgment on assessment of clerk was not entered up until nearly two years after the assessment, and it was held to constitute only an interlocutory judgment. The judgment had been in its nature final, for, until the expiration of the time limited, nothing remained but the final entry, after which *scire facias* became necessary, be-

fore entry, which rendered the judgment, upon assessment, only interlocutory.

It would appear from these cases, that besides interlocutory judgments as such (*quod computet*) and final judgments as such, when finally and properly entered up, there is an intermediate class—final orders for judgment—which may become final as such or be relegated back to the condition of interlocutory judgments, accordingly as the judgment creditor enters up or fails to enter up final judgment, according to law. In *Dibble* v. *Taylor* it is held in presumption of law, that every entry of judgment is then the regular and formal registry and enrollment of what was adjudged by the court. Referring to the assessment by clerk, it is stated that the final consideration of the court has been had, and nothing remains but the final entry. Our rule of court which prohibits the entry of judgment during term time, does not at all affect its relation back when entered in proper time. In *Mills* v. *Jones*, 2 *Rich*. 394, it is held that, under act of 1789, judgments take rank from date of entry, and the entry is the evidence and authentication of the judgment.

It will be remembered that this is a trial by the record itself, in which legal rights are to be determined by rules of evidence, and legal assets are to be distributed according to the character of the demands established. Under the former practice, applicable to this issue, the record of the judgment was in the judgment-roll. The judgment formula offered by Ann E. Wright as part of the record of a judgment, is a paper signed by an attorney, without the official signature of clerk, and does not show the time when signed and entered, as provided by law. See *Act of* 1839. It does not furnish evidence of filing or recording, nor does it state amount of costs or show the taxation of costs by clerk. The formula shows no evidence of authentication as a record of the court. The "abstract of judgments," under act of 1839, contains entries in cases "wherein judgment may be signed." It is but a summary of original entries; and, as secondary evidence, cannot be resorted to when the original record is produced before the master, and fails to furnish the evidence of its validity.

I concur with the master, that the acceptance of service by C.

D. Melton, on the writ in debt, cures the defect arising from the omission of clerk to sign and seal the writ. I cannot, however, agree and concur in the master's conclusion, giving construction to the act of 1839, the effect of the revival of judgment against W. A. Clark, administrator, or the authority of the court to amend the record so as to give validity to the alleged judgment of Ann E. Wright. At common law, final judgments were signed by the master or prothonotaries. 2 *Tidd's Pr.* 930. Under the act of 1712, 2 *Stat.* 528, the day of the month and year was required to be entered on the margin of the roll by the officer signing judgments.

I must, therefore, conclude that the signing of judgment officially by clerk, under act of 1839, is declaratory of the common law, and that the official signing and entry are essential to the validity of a final judgment according to law; that reference must be had to the period of C. D. Melton's death to ascertain the character or rank of the claims of creditors, which cannot be affected by the subsequent revival of judgment against the administrator, or the amending of the record. The case of *Farrar, Adm'r,* v. *Carmichael,* 1 *Brev.* 392, cited by the master, does not appear to be decisive of this issue. In that case the judgment was regularly entered, and the error was as to date of judgment. The record, in this case, does not show the entry or date of judgment according to law.

I conclude, as matter of law, first, that the record of the alleged judgment of Ann E. Wright, as offered before the master, does not entitle the said Ann E. Wright to rank as a judgment creditor in the distribution of the assets of C. D. Melton, deceased, as said judgment has not been signed and entered up according to law, and as said record does not furnish evidence of the final rendition of judgment by the court. Second, that the claim of Ann E. Wright can only rank as a sealed note demand in the administration of the estate of C. D. Melton.

It is, therefore, ordered, adjudged and decreed that the master's report, allowing the claim of Ann E. Wright, executrix, to rank first in the administration of the assets of C. D. Melton, deceased, be overruled and set aside, and that said claim take rank as a sealed note demand against said estate.

Mrs. Ann E. Wright appealed to this court upon the following exceptions (omitting two not considered):

1. "Because of error in holding that the judgment offered by Ann E. Wright, executrix, as obtained against C. D. Melton, does not entitle the said Ann E. Wright to rank as a judgment creditor in the distribution of the assets of the estate of said C. D. Melton, because the judgment formula was not signed on margin by the clerk.

2. "Because of error in holding that the record of the judgment of '*Ann E. Wright, executrix,* v. *C. D. Melton*' does not furnish evidence of its rendition by the court, and is thereby invalid as a judgment.

3. "Because of error in holding that the claim of Ann E. Wright against C. D. Melton can only rank as a sealed note in the administration of the assets of his estate.

4. "Because of error in holding that the revival of the judgment in 1877, by summons against the administrator of the judgment debtor, did not cure any defects or·irregularities in the original record.

5. "Because of error in not holding that (the cause having been matured by regular proceedings in 1867—entered on inquiry docket at a regular term of the court—referred to the clerk, by the presiding judge, to assess damages—the assessment made and entered on minutes—judgment formula regularly made out and filed with the clerk—judgment entered in the book called 'abstract of judgments'—execution issued—and judgment revived in 1877) the misprision of the clerk, in failing to write his name on the judgment formula at time of original entry, has been cured, if it ever was a fatal irregularity.

7. "Because of error in holding that the 'abstract of judgments' furnished only secondary evidence of the entry of judgments."

*Messrs. Hart & Hart,* for appellant.

The Wright judgment was a final judgment and not interlocutory. *Freem. Judg.,* §§ 2, 38; 1 *Bay* 451; 3 *Rich.* 195; *Cheves* 29; *Rich. Eq. Cas.* 385; 2 *Spears* 314, 315; 2 *Rich.* 394; 8

*Id.* 171. The judgment here was regularly entered. 2 *Tidd's Pr.* 931; 11 *Stat.* 72, § 5; *Freem. Judg.* 37, 38; 6 *Hill* (*N. Y.*) 646; 8 *N. Y.* 67. The clerk's omissions were mere irregularities. 1 *Brev.* 392; 25 *N. Y.* 489; 14 *Minn.* 542; 50 *Geo.* 378; 20 *How.* 102; 1 *Bailey* 619; 10 *S. C.* 297. These have been cured by the proceedings reviving the judgment. 10 *S. C.* 207, 298; 13 *Id.* 361; 14 *Id.* 223. The judgment should, in this proceeding, be regarded as amended of course. 4 *Rich. Eq.* 152; 11 *How.* 480; 18 *Id.* 404; 11 *Otto* 557.

*Mr. J. D. Pope,* contra.

Was this such a judgment as could take rank under the executors' act of 1789? It was not. 2 *Rich.* 393. The record must stand or fall by itself. 9 *Bac. Abr.* 556; *Steph. Pl.* 130; *Freem. Judg.* 407. No other evidence can be introduced on an issue of *nul tiel record*, until it is shown that there was once a duly authenticated record in existence which has been lost. 1 *Greenl. Evid.*, § 509; 4 *Rich. Eq.* 152. The record itself is here produced, and on inspection proves to be no valid judgment, not having been authenticated. 2 *Arch. Pl.* 206; 2 *Spears* 308; 2 *Barb. Ch.* 165. And the claim can rank only as a simple contract debt. 3 *Phil. Ev.* 368. [After citing and commenting on the cases relied upon by appellant and the acts of 1789 and 1839, counsel cited contra.] 2 *Brev.* 183; 4 *McCord* 291; *Mill. Comp.* 136; 2 *Hill* 438; 3 *Id.* 4; 2 *Strobh.* 218; 1 *McMull.* 490; 5 *Rich.* 372; 10 *Id.* 400.

July 4th, 1883. The opinion of the court was delivered by
Mr. Chief Justice Simpson. C. D. Melton, late of Richland county and State aforesaid, died intestate in December, 1875. The respondent, W. A. Clark, administered upon his estate, and immediately possessed himself of the personal assets, from which he realized the sum of $5,788.44. In the life-time of Mr. Melton many judgments were recovered against him in the Court of Common Pleas for Chester county, where he at one time resided. These judgments, with the exception perhaps of the one now attempted to be set up by the appellant, Mrs. Ann

E. Wright, were purchased after the death of the intestate by and assigned to Mrs. Mary B. Melton, the widow of the deceased.

Mr. Clark, shortly after obtaining letters of administration, advertised in the Columbia papers for creditors, and, supposing that all claims had been presented, proceeded to administer the estate, and with the consent of Mrs. Melton paid off many claims which were junior to her judgments, until he has now exhausted the personal estate. Recently he has received notice of the claim of Mrs. Wright, now presented as a senior judgment. Under these circumstances this action was commenced by the administrator on which the above facts were stated, the administrator complaining that, having in hand no assets or other personal estate, he cannot proceed further with the administration without the intervention and protection of the court, and giving information to the court that the intestate died seized and possessed of a lot of land with improvements thereon in the city of Columbia, containing about one acre, and demanding judgment, that he be permitted to account before the court, that creditors be called in, and that the real estate be sold and the proceeds be applied to the payment of such debts as might be established, and to that end that Mrs. Mary B. Melton be required to elect whether she will claim dower out of said real estate.

Under a call for creditors by the master, Mr. Barnwell, to whom the case was referred, various claims were presented. No objection, however, was made to any except to that of Mrs. Wright, the appellant here. This claim was resisted by Mrs. Melton, the owner of the junior judgments, on the ground that no legal judgment had ever been entered in favor of Mrs. Wright, and the sole question in the case is in reference to this judgment. Is it entitled to take rank in the settlement of the estate as a senior judgment, having priority over those held by Mrs. Melton?

The facts are as follows: At the fall term of the Court of Common Pleas for Chester county, 1869, there stood upon the inquiry docket, an action in debt of *Ann E. Wright, executrix,* v. *C. D. Melton.* The declaration had been filed October 28th, 1867, and interlocutory judgment endorsed thereon by the clerk

on same day with assessment of the amount due. During term time it was regularly referred to the clerk by the presiding judge and damages assessed and entered on the journal according to the then existing practice. After the term, to wit, November 2d, 1867, the judgment formula was made out by the attorney of the plaintiff and delivered to the clerk and *fi. fa.* lodged. The clerk filed this formula, recorded it, entered it in the " abstract of judgments," signed and tested the *fi. fa.*, but omitted to endorse on the formula the date of the filing and also to sign it officially.

It remained in this condition for ten years, when, at the October Term of the court, 1877, by regular summons to the administrator, Mr. Clark, it was revived without objection " in accordance with the force and effect of the original recovery, with leave to issue execution." It appears also that the original writ in this case had not been signed or sealed by the clerk, but Melton had accepted service by an endorsement in his handwriting and signed by himself.

The record in the case of *Ann E. Wright, executrix,* v. *C. D. Melton,* with the defects referred to above appearing on its face, was introduced before the master and relied on by Mrs. Wright as evidence of a valid judgment in her favor, which, being senior to all other judgments, she claimed should be entitled to priority in the application of the assets of the deceased. Mrs. Melton, holding the junior judgments about which there was no dispute, objected to all testimony outside the record and pleaded *nul tiel record* as to the judgment of Mrs. Wright, claiming that the absence of the clerk's official signature from the judgment formula and of the date of the filing was fatal to that paper as a judgment. The master overruled the objection of Mrs. Melton, and, finding as matter of law that Mrs. Wright had a valid judgment against the deceased which was senior to that held by Mrs. Melton, he reported that Mrs. Wright's judgment was entitled to priority in the distribution of the assets of the deceased.

Upon exceptions this report was overruled by Judge Witherspoon, who held as matter of law : First, " that the alleged record of the judgment in question did not entitle the said Ann E.

Wright to rank as a judgment creditor in the distribution of the assets of C. D. Melton, deceased, as said judgment had not been signed and entered up according to law, and as said record did not furnish evidence of the final rendition of judgment by the court; and second, that the claim of Ann E. Wright could only rank as a sealed note in the administration of the estate of C. D. Melton."

Some objection was made below to the record because the writ had not been signed or sealed by the clerk, but Mr. Melton having accepted the legal service thereof, this was held by the master—which conclusion was sustained by the Circuit judge—to be sufficient. This ruling has not been assailed seriously here, so that, as already stated, the only question before us is whether the omission by the clerk to do his duty in signing and dating the judgment prepared by the attorney of Mrs. Wright prevents the paper from having the rank and character of a judgment of record, notwithstanding the fact that it was regularly filed and entered in the abstract of judgments with all the required formalities.

The argument of the respondent is: First. That under the plea of *nul tiel record*, the existence of the judgment is denied, and that that fact can be determined alone, when thus denied, by an inspection of the record itself; and if such inspection shows an omission in said record of any essential feature it is fatal, and that no outside testimony *dehors* the record can supply the omission or cure the defect. In other words, the judgment must stand or fall upon the record. Second. That an inspection of the record in this case shows the omissions stated above, which respondent contends are fatal.

The first proposition is doubtless correct, but the second is open to examination and is really the question in this case. Was it absolutely essential to the validity of the Wright judgment, that the formula prepared and lodged in the clerk's office by the attorney should have the date of filing and the official signature of the clerk endorsed thereon? And did the omission by the clerk to do his duty in these respects, although he entered it properly in the "abstract book," deprive the paper of the

character of a judgment in a contest over the application of the assets of a deceased debtor?

We think the Circuit judge was in error in holding these omissions by the clerk as fatal. A judgment is the application of the law to the facts found in a case, and it has been defined to be the legal determination of the rights of the parties before the court. Ordinarily it is pronounced upon a verdict ascertaining the facts, but, under the former practice, when a party was sued upon a note or other contract where the amount involved was capable of being ascertained by a mere computation, and the defendant interposed no defense, judgment was supposed to be pronounced by the court by ordering a reference to the clerk for assessment, the order of reference being in substance and fact the judgment of the court for whatever sum might be assessed by the clerk.

To give force and effect, however, to this judgment, it is true that a formula was required to be prepared and filed in the clerk's office, and to be entered in the book entitled "abstract of judgments," and, under an act of the general assembly, the clerk in whose office this formula was filed was required to date it and endorse his official signature. It will be observed, however, that this formula, &c., did not constitute the judgment of the court, nor did the dating or signing by the clerk with his official signature add anything to its intrinsic character. The judgment issues from the court, not from the attorneys or the clerk; it precedes the formula, and is authority upon which the formula is prepared, but the formula constitutes no part of the judgment. It is only the evidence of the existence of the judgment, and entitles the plaintiff to have it enforced.

The judgment, as we have said, is the judicial determination of the rights of the parties, but it is not self-operative; it cannot enforce itself; it becomes necessary, therefore, that some machinery should be adopted to secure to the successful party the fruits of his recovery. Hence, it was provided by act, that a supposed copy of the judgment pronounced by the court should be filed in the clerk's office, which, being done, gave a lien on the property of the debtor, and authorized the issuing of a *fi. fa.* for its enforcement, and the object of the act in requiring that

this paper should be dated and signed officially by the clerk no doubt was that all parties should have the means of knowing of the lien, so that all persons dealing with the debtor might be put upon their guard.

So far as the parties themselves were concerned, the dating and signing amounted to nothing. And even as to third parties, while the date and the official signature of the clerk would best authenticate the judgment and put it beyond dispute, yet as to its effect as a notice, the filing is the main matter. When entered and filed in the proper office its existence could be as well ascertained without the date and signature as with them. The entry and filing are the essential facts, and whether this had taken place at a particular time could be discovered by an examination of the office as certainly where the formula had not been signed and dated by the clerk as if these things had been done.

The first step in the proceeding is the lodgment and filing of the formula. The date and signature of the clerk follow, but it is the existence of the paper in the office which gives notice to third parties, and the absence of the date and signature cannot be discovered without disclosing the existence of the paper itself, because before these can be affixed the paper must be in existence and in the proper office. Before a party can safely deal with a debtor, or, in fact, with any one, he should examine the clerk's and sheriff's office and see his condition, and where a judgment has been entered and filed against him this fact can be as well ascertained, though it may not be dated and signed, as if it had been, and especially would this be so where the judgment had been entered in the "book of abstracts," as was done in this case, with all the required formalities.

To hold, then, that the failure of the clerk in the matter suggested here destroyed the judgment, would, in our opinion, be sacrificing substance to a shadow, and would overthrow established and adjudicated rights upon the merest technicality. There is no pretense that this debt is not due or that it has ever been paid, nor is it denied that it was sued upon and prosecuted to judgment, nor is it claimed that the failure on the part of the clerk to date and sign the formula misled any one. It is claimed

that because of this failure simply, not of Mrs. Wright, but of the clerk, she would lose her debt.

The recording acts are much more stringent in their provisions requiring record of certain instruments, deeds and mortgages, &c., than the act of 1839 as to this matter. The failure to record such papers within the time prescribed renders them, in the language of the acts, absolutely void, and yet the courts have always construed these acts liberally, and have uniformly held that where the object of the recording, to wit, notice, has been accomplished or could have been accomplished by proper inquiry, the instruments in question should be declared valid. The act of 1839 does not declare that judgments not dated and signed shall be void; it simply directs the clerk to date and sign. If the failure to do this had a tendency to shut the door upon the judgment and to conceal it from the public, or if a third party could show that because this was not done he was misled to his injury, then there might be reason in holding that such omission would be fatal; but when no such effect has followed, and the judgment has been lodged and filed, it would be a most stringent construction to hold that because of such failure the whole proceeding is void.

This we cannot suppose was the object of the act. On the contrary, we are of the opinion that the omission here was a mere irregularity in a matter not vital to the judgment, but simply directory to the clerk, and may be corrected at any time. *Farrar v. Carmichael,* 1 *Brev.* 392; *Harrison v. Manufacturing Company,* 10 *S. C.* 297. The record shows that the judgment was filed, recorded and entered in the " abstract book " on November 2d, 1867, and we think it should take rank from that date, and being the senior judgment should have priority in the settlement of the estate of the intestate.

The view which we have taken of the question already discussed renders it unnecessary to consider the other points raised in the argument.

It is the judgment of this court that the judgment of the Circuit Court be reversed.