TURNER v. MALONE.

1. The Court of Probate, though of limited jurisdiction, is a court of record with very large powers, and as to proceedings clearly within its jurisdiction, is not to be regarded as an inferior court in respect to the dignity of its records.

2. A judgment is void as to parties not within the jurisdiction of the court; and when the jurisdictional defect appears on the face of the record, the judgment may be disregarded as a nullity in any proceeding, direct or collateral.

3. But where it appears upon the face of the proceedings that the parties have, by proper service, been brought within the jurisdiction of the court, the judgment cannot be attacked collaterally or disproved by parol testimony, but can be avoided only by a direct proceeding instituted for that purpose by the party claiming not to have been served, in the court and in the case where the judgment was rendered.

Before COTHRAN, J., Spartanburg, March, 1885.

The case is sufficiently stated in the opinion of this court.

*Messrs. Bobo & Carlisle,* and *J. S. R. Thomson,* for appellant.

*Messrs. Bomar & Simpson,* and *Duncan & Sanders,* contra.

March 17, 1886.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   This was an action for the recovery of a tract of land, 347 acres.   Both parties claimed under one Edmond Cooley, jr., who lived on the land until his death intestate, about ten years ago.   He left as his heirs and distributees a widow, Emeline, and five children, viz., John S. B. Cooley, Caroline Kimbrell, Teresa Oliver, Martha Jane Kimbrell, and Jefferson D. Cooley.   The plaintiff claimed that the ancestor, Edmond Cooley, about 1864, made a deed of gift of the land to his wife, Emeline, which was not at the time probated or recorded; but about 1874, without a new deed, the old one, as claimed, was

re-delivered and recorded. The plaintiff then introduced a deed from Emeline Cooley to the plaintiff, George S. Turner, bearing date September 17, 1877. This deed is not in the "Brief," and, therefore, the consideration does not appear, but Mrs. Cooley, who was examined as a witness, testified that she received only $15 for her share of the proceeds of sale. Plaintiff rested.

The defendant answered the case made by offering in evidence the full record of proceedings in the Probate Court of Spartanburg, in the case entitled *Ralph K. Carson, as administrator of Edmond Cooley, deceased,* v. *Emeline Cooley, John S. B. Cooley, Caroline Kimbrell, Martha Jane Kimbrell, et al.,* which was a petition on the part of Carson, administrator of Edmond Cooley, deceased, to sell this tract of land as his intestate property for the payment of his debts, one of which for a small amount was in judgment.

The record on its face was entirely regular. It represented that there were debts of the intestate unpaid; that the personalty was insufficient to pay the debts; and prayed that the land might be sold in aid of the personalty. All the heirs were named as parties in the summons; one was a minor, and he had a guardian *ad litem* appointed. The summons was entered May 8, 1877, in the sheriff's office, and had upon it the affidavit of the deputy sheriff, C. W. Mitchell, "that he had served the summons and complaint in this action on the defendants by delivery to them personally, and leaving with them copies of the same, on the 11th and 15th May, A. D. 1877, and that he knows the persons so served to be the ones mentioned and described in the summons as Emeline, John S. B., and Jefferson D. Cooley, M. J. and C. Kimbrell, and Teresa Oliver, the defendants therein," &c. All the parties made default, and, after the proper time, George N. Nichols, Esq., probate judge, on July 13, 1877, after stating in his judgment "that the persons named as defendants had been duly served and made default," ordered the land to be sold for the purposes aforesaid; and being offered for sale on October 1, 1877, was bid off by one William Bush for $210, which was paid and applied to the debts of the intestate. The sheriff executed title to F. M. Trimmier and William Bush, who afterwards made a conveyance to the defendant, Alfred Malone.

In reply, the plaintiff proposed to show by the testimony of Martha Jane Kimbrell, one of the children of Edmond Cooley, that she was never personally served with summons in the aforesaid proceeding in the Probate Court, under which the land was sold. Objection was made that the record, regular in form, could not be contradicted in a collateral manner. The testimony was admitted, and Mrs. Kimbrell testified that, "so far as she could recollect, she was never served with any papers." The plaintiff, also against the protest of defendant, was allowed to offer in evidence the sheriff's book, which had opposite the name of Mrs. Kimbrell the word "left." The plaintiff was also allowed, in reply, to offer a deed to himself from M. J. Kimbrell and other children of Edmond Cooley, bearing date after the land was ordered to be sold by the probate judge, viz., September 17, 1877—to which defendant excepted.

Upon the charge of the judge, the jury found for "the plaintiff 2–15 of the land in dispute." The defendant appeals to this court on various grounds, which need not be set out here, for the reason that they are all substantially covered by the requests to charge, which were refused. The defendant made the following requests to charge:

I. "That the judgment record from the Probate Court is conclusive upon the parties and their privies of every fact therein adjudicated.

II. "That said record establishes conclusively that Edmond Cooley died seized and possessed of the said land.

III. "That the title of Mrs. Emeline Cooley and the children of Edmond Cooley was taken away by said decree and vested in the purchaser at the sale.

IV. "That Mrs. Emeline Cooley and the other parties in said probate record could not convey any right or title to said land to George Turner, after said judgment was rendered."

The judge charged the jury that the original deed of Edmond Cooley to his wife in 1864 was void under the law as it then stood. And as to the record of the judgment from the Probate Court in the case of *Carson, administrator,* v. *Emeline Cooley et al.,* he charged that all the parties, who were legally summoned in that proceeding, were bound by the judgment and sale under

it, and had not the right afterwards to sell and convey the land; that the record of that proceeding, regular in form, raised a presumption that all the defendants were legally summoned, and if so, although they made default, they were in effect before the court and bound by the judgment; that presumption was not, however, conclusive, but might be rebutted, and it was for them to say, under the proof, whether Mrs. Martha Jane Kimbrell was legally summoned, and if not, the judgment was not binding on her, and her deed afterwards made carried her interest as distributee in the land to the plaintiff.

There is really but one question in the case, and that is as to the force and effect of the judgment and order of sale in the Probate Court. If the judge was correct in his charge upon that subject, the verdict was right; if he was in error, there will have to be a new trial.

Although the Court of Probate is one of limited jurisdiction, the law has given it very large powers, and expressly made it "a court of record;" and we suppose that, in reference to proceedings clearly within the jurisdiction given, it is not to be considered as in the category of inferior courts, in respect to the dignity of its records. *Thomas* v. *Poole,* 19 *S. C.,* 336.

There seems to be some want of clearness and uniformity in regard to the distinction between *void* and *voidable* judgments, and especially as to what is a collateral, as distinguished from a direct, impeachment. There is no doubt that a void judgment, order, or decree, in whatever tribunal it may be entered, is, in legal effect, nothing. "All acts performed under it, and all claims flowing out of it, are void. Hence, a sale based on such a judgment has no foundation in law." It is equally certain that judicial proceedings are void, when the court, in which they are taken, is acting without jurisdiction. If it has jurisdiction of the subject-matter, but not of the parties, the judgment *quoad* such parties is void.

It is not, however, always so clear how that want of jurisdiction should be made to appear. If the jurisdictional infirmity appears in the record itself, that is, no doubt, conclusive, and the judgment may be disregarded as a nullity whenever and wherever it is encountered, in any proceeding direct or collateral, as in the

cases of *Hill* v. *Robertson*, 1 *Strob.*, 1; *Bull* v. *Rowe*, 13 *S. C.*, 355; and *Clark* v. *Melton*, 19 *Id.*, 498. But when the record exhibits no such defect, but is regular on its face, showing all the elements of jurisdiction, and the alleged infirmity lies below the surface, and proof is necessary to disprove the record—when can that be done, between what parties, and how ? As Mr. Freeman says: ''How and in what circumstances this fact may be made to appear, are questions to which diverse answers may be found in the authorities. Undoubtedly the records of the court may be inspected, and if they show the fact, they are competent evidence of their own invalidity." *Void Jud. Sales*, § 34.

If the alleged infirmity does not touch the jurisdiction of the court which rendered the judgment, we take it as clear that it is entirely exempt from impeachment by any persons who are strangers to the record, for the reason that in such case, the court having jurisdiction must be considered to have adjudged every question, including the service of parties, involved in the case. It is to all intents and purposes *res adjudicata*, and may not be again stirred. As Judge Campbell said, in the case of *Beauregard* v. *City of New Orleans*, 18 *How.*, 503: "This court has contributed its share to that stability which results from a respect for things adjudicated. It is the settled doctrine of this court, that when the proceedings of a court of justice are collaterally drawn in question, and it appears from the face of them that the subject-matter was within its jurisdiction, they cannot be impeached for error or irregularity; that if a court has jurisdiction, its decision upon all the questions that arise regularly in the case are binding upon all other courts until they are reversed," &c. But, it seems to us, this assumes that the court had jurisdiction. There can be no adjudication until there is a case, and there can be no case without parties.

So that the question recurs, what is to be done where the alleged hidden infirmity goes to the jurisdiction itself, as, for example, denying summons or notice by the parties in the judgment ? If there is such hidden jurisdictional infirmity, doubtless it may be made to appear in some way. But by whom, and how can it be done ? Is it allowable, in an action between third parties, to overthrow by parol proof a judgment apparently good and

valid, and under which, and upon faith in the court and its judg-
ments, rights have been acquired? That is to say, can the record
be contradicted in any suit where the judgment is offered in evi-
dence as the foundation of rights? The books are full of declar-
ations, that a judgment, regular in form and pronounced by a
competent court having jurisdiction, is conclusive—an absolute
verity. It would seem that a judgment should be considered as
something more than an ordinary fact, liable to be overthrown
by parol proof; that there is in its favor more than a presump-
tion of correctness, which may be rebutted; that there is a legal
presumption, conclusive in its character, which gives it immunity
from impeachment in any collateral proceeding.

There is however great conflict of authority upon the subject
in the different States. Mr. Freeman states what he considers
the most approved view, as follows: "It has often been said that
a judgment is void whenever the court which pronounced it had
not jurisdiction of the parties to the judgment or of the subject
matter in controversy. This is undoubtedly true everywhere,
provided the want of jurisdiction is not controverted or is mani-
fest from an inspection of the record. It is also true in some of
the States even though the jurisdictional facts are asserted in the
record. The weight of adjudged cases, however, sustains the
proposition that the judgment of a domestic court of general
jurisdiction is not void except where the court has no jurisdiction
over the subject matter of the suit; or where, having such juris-
diction over the subject matter, it is shown by the record to have
had no jurisdiction over the judgment defendant.     *     *     *
The word 'void' can with no propriety be applied to a thing
which appears to be sound, and which, while in existence, can
command and enforce respect and whose infirmity cannot be made
manifest. A judgment rendered without in fact bringing the
defendants into court, unless the want of authority over them
appears in the record, is no more void than if it were founded
upon a mere misconception of some matter of law or of fact
occurring in the exercise of an unquestionable jurisdiction. In
either case the judgment can be avoided and made *functus officio*
by some appropriate proceeding instituted for that purpose, but

if not so avoided must be respected and enforced." *Freem. Judg.*, § 116.

It seems that, in respect to impeachment, a judgment may be either "void" where the record shows the fatal defect without proof, or "voidable" where there is a hidden infirmity which can only be made to appear by proof, or "avoided" where such infirmity has been already properly established. In the case of a judgment merely "voidable," where proof is necessary, it seems that the infirmity cannot be shown in a collateral manner, but only in a direct proceeding instituted for that purpose ; and until that is done the judgment must be respected as such. As we understand it what is meant by a direct proceeding is a proceeding by the party injured, claiming to have the judgment formally avoided by order in the court and in the case in which it was rendered. A collateral attack upon a judgment has been defined to be "one in an action other than that in which it was rendered." *Rap. & Law. Dict.*, *title*, "Collateral Impeachment." *Darby & Co.* v. *Shannon*, 19 *S. C.*, 527.

Now apply these principles to this case. The Probate Court undoubtedly had jurisdiction of the subject matter, its proceedings were in due form, and its judgment and order of sale entirely regular. But it was alleged that, fair as they might be on their face, they covered a hidden jurisdictional infirmity as to one of the parties, which that party, notwithstanding acquiescence for years, had the right to show by testimony in contradiction of the record, and thereby then and there avoid the judgment and all that had been done under it, so far as that party was concerned. The action in which this testimony was offered was between strangers to the judgment. Neither of them were parties to it or had any connection with it, except that the defendant offered in evidence the record as the authority for the sale under which he claimed as an innocent purchaser at a judicial sale. When for the first time at the trial it was proposed to avoid that judgment as to one of the parties to it by parol proof tending to show, in contradiction of the statements in the record and the decree of the court, that such party was not legally summoned in the proceedings in which the decree was rendered, that certainly was an impeachment without notice of the judgment to that extent; and,

as it seems to us, it was collateral in its character and as such not allowable; that the judgment was not "void" for the reason that the record did not show it, nor had it been so declared in a proceeding between the proper parties instituted for that purpose, and even in the view that it was "voidable" should have been "respected and enforced."

It was urged, however, that the rule has been settled otherwise in this State, and that here "a void judgment may be attacked collaterally whenever it comes in issue before the court." This proposition as announced is true, when considered with reference to the distinction between "void" and "voidable." The whole record is always admissible in any proceeding, and if that discloses a jurisdictional infirmity, the judgment is absolutely "void"; but, as we understand it, where that infirmity can only be made to appear by proof contradicting the record, the judgment cannot be properly said to be "void," but is "voidable merely," and can only be impeached by a direct proceeding. We think the cases cited are reconcilable on this view.

*Gregg* v. *Bigham*, 1 *Hill*, 302. At first view this case might be taken as authority for the proposition that a judgment may be impeached whenever it may be introduced as a link in a chain of title even if it can only be done by parol proof. But we think when examined closely it will be found to be an authority on the other side. The action was trover for negroes. Gregg had judgments against his mother under which he had the negroes sold and purchased them himself. Afterwards, disregarding the purchase by Gregg, the negroes were sold under other judgments and purchased by Bigham. Thereupon Gregg sued Bigham for the negroes, and he, Bigham, offered to show that the judgments of Gregg under which he held were fraudulent and void. The court held that he might do so, for the reason that he purchased under his own judgments, and he should not be allowed to take advantage of his own wrong or to reap the fruits of a fraud perpetrated through a judgment any more than if it had been a fraudulent deed from his mother, In delivering the opinion of the court, Judge O'Neall said: "It would seem to be clear that the judgments of the plaintiff against his mother, so far as he sets them up for the purpose of acquiring title to his mother's

slaves, may be shown by the defendant to be fraudulent and therefore void." But he goes on immediately to add : "For all other purposes, such as a justification to the sheriff for a levy and sale under them, or as part of a stranger's title who purchased under them, they would be good. *Sims et al.* v. *Slacum*, 3 *Cranch*, 300." Here is a distinct declaration which goes so far as to say that when a stranger purchases under a judgment his title cannot be defeated even by showing that the judgment under which he purchased was, as between the parties to it, fraudulent and void.

*Lyles* v. *Boles* (8 *S. C.*, 258) was not at all analogous to this case. That was an action on sheriff's bond for neglect in not taking bond in bail trover in the case of *Lyles* v. *Tully*. It appeared from the record that the judgment in the case was given by the judge at chambers, and therefore it was held to be void and the plaintiff was non-suited. No testimony was offered by the defendant, and the case clearly belongs to that class where the mere exhibition of the record disclosed the fatal infirmity which made the judgment void.

*Finley* v. *Robertson* (17 *S. C.*, 438) was in some respects like this case, but in regard to the very point under consideration it was very different. In that case the judgment of the probate court was sustained as to the adults and only avoided as to the infants, for the reason that the record itself showed that they were made parties by acceptance of service, which it was held could not be done. In delivering the judgment of the court, Judge Hudson said: "The record of this inferior court fails to show that the law has been complied with in that action, either in making the infants parties or in the appointment of guardians *ad litem;* on the contrary, it shows that the proper steps were not taken." It is true, the judge went on to add something about the testimony of Thomas R. Finley which had been ruled out by the Circuit Judge, but that was merely supplementary. There was no proof offered which contradicted the record, and this case also may be considered as coming within the category of those where the mere exhibition of the record disclosed the fatal infirmity, and, to that extent, made the judgment void.

*Bragg* v. *Thomson* (19 *S. C.*, 574) really did not involve the

point made here, although some expressions in the opinion of the court seem to look in that direction. The judgment offered in that case came from a trial justice court, and there being no record or presumption of jurisdiction in favor of an inferior court not of record, the plaintiff was allowed to prove by parol that, at the time the suit was brought by the trial justice, two of the parties named as defendants were actually dead. In that there was no contradiction of a record of a judgment regularly obtained in a court of record against persons then living.

Feeling the importance of having a settled and clear rule upon a subject which seems to us to be somewhat obscure, and as to which the cases are certainly not in accord, we have taken the occasion to review the authorities upon the subject in the hope of contributing something to that end.

The judgment of this court is, that the judgment of the Circuit Court be reversed and the cause remanded for such further proceedings as the parties may be advised.