**ANDERSON v. BOWERS.**
**Civ. No. 1417.**

United States District Court,
W. D. South Carolina,
Spartanburg Division.

Jan. 8, 1954.

J. Davis Kerr, Kerr & Evins, Spartanburg, S. C., for plaintiff.

John C. Williams, U. S. Atty., Chester D. Ward, Jr., Asst. U. S. Atty.,

Greenville, S. C., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Donald P. Hertzog, Sp. Assts. to Atty. Gen., for defendant.

WYCHE, Chief Judge.

This is an action for the recovery of income taxes alleged to have been erroneously paid by plaintiff and illegally collected by the government for the calendar year 1943. It is admitted that the defendant was, at the time such taxes were paid and collected, the Collector of Internal Revenue for the State of South Carolina and that all payments made by the plaintiff were made to him in such capacity though prior to the date this action was commenced he had resigned and is not now the Collector of Internal Revenue. It is further admitted that this Court has jurisdiction to hear and determine the issues in the cause and that all conditions precedent to the maintenance of the action have been performed or have occurred.

### Findings of Fact.

The facts have been stipulated as follows:

1. Plaintiff, hereinafter called taxpayer, is the widow of J. L. Anderson, deceased, and was the sole executrix of his estate until she was discharged by the Probate Court of Chesterfield County, South Carolina, on February 28, 1941.

2. J. L. Anderson died testate in Cheraw, Chesterfield County, South Carolina, on February 18, 1940, leaving surviving him his widow, the plaintiff herein, and two sons and two daughters. By his will, the entire estate was left to his widow with the exception of the forgiveness of certain indebtednesses owed to him by his four children.

3. On February 12, 1941, taxpayer, as executrix of Decedent's estate, filed a federal estate tax return disclosing a gross estate of $274,567.59, and deductions aggregating $97,121.14. Among the deductions claimed was executrix' commission in the sum of $25,106.99. The estate tax liability as disclosed by the return in the sum of $15,128.15 was paid on February 12, 1941.

4. On February 28, 1941, taxpayer, as executrix of the estate, filed an administrator's first and final account with the Probate Court of Chesterfield County, South Carolina. In the account taxpayer sought the approval and allowance of the payment to herself of executrix' commission in the sum of $25,106.99. The account was approved and allowed as filed by the Probate Court and taxpayer, on an ex parte Order, was discharged as executrix on February 28, 1941.

5. On March 16, 1942, taxpayer filed her individual federal income tax return for the year 1941, disclosing a net income of $47,271.38. In Item 6 of the return the amount of $25,106.99 was reported as taxable income with the following explanation—"administratix fee—J. L. Anderson Est." The tax shown due on the return in the sum of $18,897.46 was duly paid.

6. In October or November of 1942, representatives of the Commissioner of Internal Revenue commenced an audit of the federal estate tax return which taxpayer had previously filed as decedent's executrix. As a result of the audit decedent's gross estate was increased from $274,576.59, as returned, to $562,905.68. The increase was caused principally by inclusion in the gross estate of the face value of a portion of the life insurance policies carried on decedent's life and certain transfers made by decedent to his children which were determined to have been made in contemplation of death. The increase also resulted from the determination of the Commissioner of Internal Revenue that the amount of executrix' commission should be reduced from $25,106, the amount claimed, to $6,606.50, this being the maximum allowable executor's commissions under the law of South Carolina. As a result of the above adjustments, as well as certain other adjustments not material here, the Commissioner of Internal Revenue determined a deficiency estate tax which, together with interest, totalled $60,002.25. This

amount was assessed by the Commissioner and was paid by the estate on or about March 15, 1943. No claim for refund with respect to the original deficiency federal estate tax has been filed. Payment was made by check of the "J. L. Anderson tax account" with funds belonging to the taxpayer and her four children which had been deposited therein on March 15, 1943. Among the funds deposited at that time was taxpayer's check for executrix' commission in the sum of $25,105.99.

7. On February 25, 1943, taxpayer filed claim for refund of $10,072.74, representing a portion of the federal income tax which she had paid with respect to her income for the calendar year 1941, and asserted the following grounds as the basis thereof:

In reporting taxable income, the claimant reported $25,106.99 as received or due from Executor's Commissions from the Estate of J. L. Anderson. In settlement of the Estate Tax liability, the Revenue Agent allowed only $6,608.50 as Executor's Commissions, and the Claimant refunded the difference to the Estate, and same was applied to the payment of the additional Estate Taxes.

As a result the taxable income for the year 1941, was reduced by $18,498.49, and the above claim for refund is based upon this reduction.

8. Some time after the receipt of the letter from the Commissioner of Internal Revenue in which it rejected taxpayer's claim for refund in its entirety, and within due time, plaintiff instituted suit against W. P. Bowers, Individually and as Collector of Internal Revenue for the District of South Carolina, seeking a refund for federal income taxes paid by her in the year 1941 in the amount of $18,498.49 (it being conceded by her that the correct amount of executrix' commission to wit: $6,608.50, was properly reported by her as income in the year 1941) as being erroneously reported by her and illegally collected by the defendant.

9. The above suit came on for trial before Hon. J. Waties Waring, United States District Judge for the Eastern District of South Carolina, upon an agreed Stipulation of Fact, and on May 18, 1948, he signed and filed his Opinion, Conclusions of Law and Order, wherein taxpayer's claim was refused and her suit dismissed, see 77 F.Supp. 980.

10. Shortly after the Opinion and Order of Judge Waring was filed, taxpayer filed a claim for refund with the Collector of Internal Revenue for the year 1943, basing her claim on an estimated tax for the year 1943 on the amount of $18,498.49 which was applied, along with other funds, to pay additional federal estate taxes levied against the said estate of J. L. Anderson, deceased.

11. Taxpayer appealed from the Order of Judge Waring, above referred to, to the United States Court of Appeals for the 4th Circuit, which Court, on November 8, 1948, affirmed the Judgment of the District Court as will more fully appear from the Opinion in said cause reported in 170 F.2d 676 as Modified by the United States Court of Appeals for the 4th Circuit on January 15, 1949, upon Petition for Rehearing. 209 F.2d 510.

12. On April 23, 1953, taxpayer (as plaintiff herein) instituted the instant action in the District Court of the United States for the Western District of South Carolina against the defendant, William P. Bowers, a resident of this District, and who was, at the time the taxes were paid on which this refund is sought, Collector of Internal Revenue for the State of South Carolina but who, since such date, and before the institution of this action, had resigned; the correct amount of taxpayer's refund claim for the year 1943 and for which the present suit is instituted (referred to in Paragraph 10 hereof) is about $7,199.93 plus interest as provided by law, but it appears that a recomputation of the plaintiff's tax liability for 1943 will be necessary to ascertain the correct amount.

13. The final Order of the Probate Court of Chesterfield County, South Carolina, approving the executrix' final account and the allowance of the executrix' commissions in the sum of $25,106.99,.

was entered on February 28, 1941. No proceeding of any kind has been taken to have the Order vacated, annulled or set aside. The Order as originally entered still stands and there has been no Order or Judgment of any Court made regarding its validity and no appeal has been taken from the final Order entered by the Probate Court on the said date, February 28, 1941.

14. On February 4, 1941, while the plaintiff-taxpayer was absent from home, she received a check dated February 28, 1941, for $25,106.99, payable to her for commissions as executrix. At the suggestion of her son and other advisors she signed the check as executrix and returned it to her attorney. The check was not cashed but was held by her son, together with other checks payable to certain beneficiaries of the Estate of J. L. Anderson, deceased. The commissions of $25,106.99 were claimed as a deduction in the Estate tax return. The Commissioner allowed the deduction claimed in the amount of $6,608.50 and disallowed the deduction in the amount of $18,-498.49, which resulted in an estate tax deficiency. When the deficiency was determined the checks held by the taxpayer's son, including the one for commissions, were endorsed by the respective payees and were deposited on March 15, 1943, in a special account. A check was drawn on this special account payable to the Collector of Internal Revenue for the amount of the Estate tax deficiency.

### Conclusions of Law.

### Opinion and Order.

The taxpayer in this case seeks relief under Sec. 23 of the Internal Revenue Code, 26 U.S.C.A. § 23, which is as follows: " * * * In computing net income there shall be allowed as deductions: * * * (1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".

Having returned the fund on which tax deduction is sought in the year 1943, the taxpayer contends that she is entitled to a tax deduction in 1943 under the decision of the Supreme Court in the case of North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197, where the Court said: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * * If in 1922 the government had prevailed, and the company had been obliged to refund the profits received in 1917, it would have been entitled to a deduction from the profits of 1922, not from those of any earlier year."

The taxpayer also asserts broad equitable considerations in support of her claim for deduction.

It is admitted that the sum of $18,-498.49 has been taxed twice, once as a part of the Estate of J. L. Anderson, dec'd., the Commissioner having disallowed such amount as executrix' commission and assessed a Federal Estate tax thereon, which was duly paid, and again by the collection of income tax thereon from the taxpayer. This is, in my opinion, contrary to congressional intent. The Supreme Court in the case of Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 159, 83 L.Ed. 119, declared: " * * * Further, by the 'estate tax', Congress has imposed a tax upon the transfer of the entire net estate of every person dying after September 8, 1916, allowing such exemptions as it sees fit in arriving at the net estate. Congress has not indicated any intention to tax again the value of the property which legatees, devisees or heirs receive from the decedent's estate."

The government, however, contends that when the taxpayer received and reported the amount on which the tax deduction is now sought as commissions, which had been allowed by the Probate Court, it represented income to her and was properly taxed as such. It further

contends that when the taxpayer paid back or refunded the fund in question in 1943, she was not required or obligated to do so and that such repayment being purely voluntary she is not entitled to a deduction in 1943, and relies primarily in support of this position, on the Order of the Probate Court allowing the amount as commissions, which Order has never been appealed from, modified or reversed.

The taxpayer had previously instituted suit against the defendant for the income tax paid on the identical fund in question for the year 1941. She was unsuccessful in that litigation. Both the District Court and the Court of Appeals for the Fourth Circuit adopt the view that when she received the fund in question, she received the same under a claim of right and could do with it as she saw fit. The decision of the District Court and the Court of Appeals relied upon the principle announced in the case of American Oil Consolidated v. Burnet, supra, where the Supreme Court said: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

The opinion of the Circuit Court of Appeals, 170 F.2d 676, 678, after quoting the above, said: "We applied this rule in Penn v. Robertson, 4 Cir., 115 F.2d 167, where it was held that a taxpayer must include as taxable income monies received or credited to him in the tax year under a stock purchase plan although the plan was invalid under the relevant state statutes and was rescinded in the following year. See also Barker v. Magruder, 68 App.D.C. 211, 95 F.2d 122; but cf. Commissioner of Internal Revenue v. Turney, 5 Cir., 82 F.2d 661.

"From these decisions it is clear that when income has been received by the taxpayer or credited to him under a claim of right, it must be accounted for in the year in which it was received or could have been received by him; and if it is shown in a subsequent year that the payment was wrongfully made and the taxpayer is required to make restitution, his remedy is not to sue the Collector to recover the excess tax mistakenly paid but to claim the repayment as a deduction from income in a year in which it is made. This procedure is required because income taxes are imposed and must be accounted for on a yearly basis under the decision of Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365, 51 S.Ct. 150, 75 L.Ed. 383."

The Circuit Court of Appeals, in its opinion, referred to a possible claim of the taxpayer for a deduction from her taxable income for the year in which the repayment was made (1943). In denying a Motion for Rehearing in this case the Court said: "The court holds that nothing in its opinion was intended to prejudice the appellant in any other action not now before this court which she has brought or may hereafter bring for a refund on the income tax paid by her for the calendar year 1943; and nothing in its opinion was intended to prescribe the conditions precedent to such an action. With this understanding, the rehearing asked for is denied."

The opinion of the District Court in this case, 77 F.Supp. 980, 983, throws light on the position taken by the government then as distinguished from now as well as on the reasoning of the Court in arriving at its conclusion denying relief to the taxpayer for the year 1941. In this case the District Court said: "The government concedes that she might readily have had a valid claim for a refund on the income tax paid by her for the calendar year of 1943 since that is the year in which she paid this money to the government. * * * And it must be remembered that the liability was not established until 1943 and that in 1941 there was only a contingency. As was said by Mr. Justice Brandeis: 'Except as otherwise specifically provided by statute, a liability does not accrue as long as it remains contingent.' Brown v. Helvering, 291 U.S. 193, 200, 54 S.Ct. 356, 360, 78 L.Ed. 725. And the same

Justice, speaking for the Supreme Court in Heiner v. Mellon, 304 U.S. 271, at page 276, 58 S.Ct. 926, at page 929, 82 L.Ed. 1337, says: 'Losses suffered by a taxpayer in a later year may be deducted from profits, if any, earned by him in that later year; but the tax on a year's income may not be withheld because losses may thereafter occur.' * * * That she was forced to make a contribution in this same amount and chose to use the same check, rather than other assets, in 1943, does not affect her tax liability as of 1941. Although not necessary to decide that point, it appears to me that she clearly had a right to file an amended Return for 1943 claiming a credit for payments made by her in that year, and this decision is in no way to be construed as depriving her of any right she may have in that respect."

In its Order the District Court said: "In accordance with the opinion heretofore filed and the foregoing findings of fact and conclusion of law, judgment is rendered for the defendant; provided, however, that the findings and Order herein are not in any way to be construed as affecting any claim that the plaintiff may have against the United States or the Collector of Internal Revenue for refund for the calendar year 1943 or any other subsequent year."

The position, apparently, asserted by the government there and the position it now assumes seem to be inconsistent, and though this in itself would not defeat its right to assert any defenses it has in the instant action if such defense is meritorious, I agree with the view announced by the Court of Appeals for the 5th Circuit in the case of Joseph Eichelberger & Co. v. Commissioner of Internal Revenue, 88 F.2d 874, 875, wherein the Court said: "The right (claim of loss) was claimed in the 1930 return and disallowed by the Commissioner. The United States got the benefit of his decision then and ought to abide by it now. * * We said in Perkins v. Thomas, Collector, 5 Cir., 86 F.2d 954, 956: 'It is manifestly unjust to allow the government, having thus informed the taxpayer he could not have the deduction for his invested capital in 1928, now to say he could have it only then.' "

■ The test applied by the Courts as to whether or not a taxpayer is entitled to a deduction from income in the year in which funds formerly received by the taxpayer under the claim of right doctrine are repaid or refunded is whether the taxpayer was required or obliged to make the repayment. In North American Oil Consolidated v. Burnet, supra, the Supreme Court said: "If in 1922, the government had prevailed, and the company had been obliged to refund the profits received in 1917, it would have been entitled to a deduction from the profits of 1922, not from those of any earlier year."

■ Also, in Penn v. Robertson, 115 F.2d 167, at page 173, the Circuit Court of Appeals for the 4th Circuit, sets out principles of income tax accounting applicable to the issues in the instant case. Among other cases it cites Heiner v. Melon, 304 U.S. 271, 58 S.Ct. 926, 82 L.Ed. 1337; Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383 and Saunders v. Commissioner, 10 Cir., 101 F.2d 407, and reaches the following conclusion: " * * * therefore, moneys received by a taxpayer as his own under a claim of right and without restriction as to their disposition are taxable for the year in which they are received and retained even though in a later year the taxpayer is obliged to refund them in whole or in part, in which event he would have a claim for deduction in the later year."

Undue importance is attached by the government to the Order of the Probate Court for Chesterfield County.

Art. V, Sec. 19 of the South Carolina State Constitution of 1895, provides, in part, as follows: "§ 19. Court of probate. * * * the jurisdiction in all matters testamentary and of administration, in business appertaining to minors, and the allotment of dower, in cases of idiocy and lunacy, and persons non compos mentis, shall be vested as the General Assembly may provide, * * ."

The Supreme Court of South Carolina in Beatty v. National Surety Company, 132 S.C. 45, 128 S.E. 40, 43, decided that: "Under the Constitution of 1895 * * * no judicial power is expressly vested in the court of probate. It has only such jurisdiction as the General Assembly may confer. Bradford v. Richardson, 111 S.C. 205, 212, 97 S.E. 58, and see Davenport v. Caldwell, 10 S.C. 317."

To the same effect is the decision in Beckwith v. McAlister, 165 S.C. 1, 162 S.E. 623, wherein the Court reaffirmed the doctrine that the Probate Court's jurisdiction is purely statutory.

The General Assembly of South Carolina has by Section 9017, Code of Laws of South Carolina, 1942, limited the Probate Court's jurisdiction in fixing commissions for executors or administrators, as follows: "Every executor or administrator shall, for his, her or their care, trouble, and attendance, in the execution of their several duties, take, receive, or retain in his, her, or their hands, a sum not exceeding the sum of two dollars and fifty cents for every hundred dollars which he, she, or they shall receive, and the sum of two dollars and fifty cents for every hundred dollars which he, she, or they shall pay away, in credits, debts, legacies, or otherwise * * * nor shall any executors or administrators * * * be entitled to any commissions for paying or retaining to themselves any such debts or legacies."

In construing Section 9017, the Supreme Court of South Carolina, has repeatedly held that Executors and Administrators must actually receive and handle money in order to justify an allowance of the statutory commissions. Spartanburg County v. Arthur, 180 S.C. 81, 185 S.E. 486; McNulty v. DeSaussure, 41 S.C. 457, 19 S.E. 926, 946, 20 S.E. 64; Ruff v. Summers, Ex'rs, 4 DeSaus, S.C., 529; Logan v. Logan, 1 McCord Eq. S.C., 1.

Recognizing that under certain conditions and for extraordinary trouble, Executors and Administrators possibly would not be sufficiently compensated if paid only the amount fixed by Section 9017, the General Assembly fixed a method for such Executors or Administrators to obtain additional compensation, but specifically took from the Probate Court the power and jurisdiction to fix extra compensation and placed such jurisdiction exclusively in the Court of Common Pleas. This became Sec. 9018 of the Code of Laws of South Carolina, 1942, the pertinent portions of which are as follows: "9018. Executors not satisfied may bring action for additional compensation.—Any executors or administrators, who shall have had extraordinary trouble in the management of the estates under their care, and shall not be satisfied with the sums hereinbefore mentioned, may be at liberty to bring an action in the court of common pleas for their services; and the verdict of the jury and judgment of the court thereupon shall be final and conclusive in such cases: provided, always, that no verdict shall be given for more than five per centum over and above the sums allowed by this chapter."

An examination of Sections 9017 and 9018, supra, shows a clear intention on behalf of the General Assembly to limit the jurisdiction of the Probate Court in allowing Executors' commissions to an amount not exceeding two and one-half per cent on monies received and two and one-half per cent on monies paid out; if an Executor or Administrator desires additional compensation for extraordinary service, jurisdiction is vested exclusively in the Court of Common Pleas.

No action was ever instituted by the taxpayer in the Court of Common Pleas to obtain extra compensation, and her sole claim and authority for the sums paid to her as commissions, $25,106.99, was the Order of the Probate Court for Chesterfield County approving her final accounting in which such sum was set out as commissions due her.

The first and final return and account of the petitioner in her capacity as Executrix filed with the Probate Court for Chesterfield County on February 28, 1941, approved by the Probate Court, in

which commissions were set out as $25,106.99, show conclusively that such commissions were based upon the total gross amount of the Estate received and disbursed and were not calculated upon the cash sums received and disbursed pursuant to and in accordance with Sec. 9017.

The Commissioner of Internal Revenue, from an examination of such records correctly ascertained that under the South Carolina law the maximum allowable commissions amounted to $6,608.50, and, therefore, disallowed the amount in excess of such sum.

■ It is well-settled in South Carolina that a judgment may be disregarded as a nullity wherever encountered in any proceeding whether direct or collateral where jurisdictional defects appear on the record. As said by the State Supreme Court in the case of Hood v. Cannon, 178 S.C. 94, 182 S.E. 306, 309: "In the case of Woods v. Bryan, 41 S.C. 74, 19 S.E. 218, 220, 44 Am.St.Rep. 688, the court, with reference to collateral attacks on judgments, quotes with approbation from the case of Turner v. Malone, 24 S.C. 398, 401, the following language: ' "If the infirmity appears in the record itself, that is, no doubt, conclusive; and the judgment may be disregarded as a nullity whenever and wherever it is encountered, in any proceeding, direct or collateral, as in the cases of Hill v. Robertson, 1 Strob. 1; Bull v. Rowe, 13 S.C. 355, and Clark v. Melton, 19 S.C. 498." ' "

To the same effect are the decisions in the cases of Stone v. Mincey, 180 S.C. 317, 185 S.E. 619; Davenport v. Caldwell, 10 S.C. 317; Lyles v. Bolles, 8 S.C. 258.

In the case of Beckwith v. McAlister, 165 S.C. 1, 162 S.E. 623, 628, supra, the opinion of the Court is particularly pertinent, and, in part, is as follows: "In making its order of January 5, 1924, the probate court exceeded its jurisdiction. 'By "excess of jurisdiction" as distinguished from the entire absence of jurisdiction (as applied to cases like the instant one), we understand and mean that the act, though within the general power of the judge, is not authorized, and

therefore void, with respect to the particular case, because the conditions which alone authorize the exercise of his general power in that particular case are wanting; and hence the judicial power is not in fact lawfully invoked.' "

Inasmuch as the taxpayer reported and paid income tax on the maximum amount allowed as commissions under South Carolina law, no question is raised as to whether or not she was entitled to the maximum commissions. Therefore, the act of the Probate Court for Chesterfield County in allowing such commissions was, purely, ministerial, he, in effect, computing the commissions on the mathematical formula set out in Section 9017 of the South Carolina Code.

In view of the decision of the South Carolina Supreme Court in Beckwith v. McAlister, supra, and other cases cited above, the Order of the Probate Court in attempting to allow commissions in excess of the maximum allowable commissions was a nullity and void and may be disregarded whenever it is encountered.

■ The law of South Carolina is clear that even though an Estate has been wound up and the Executor discharged, the Court is not without power to have the same reopened and suit instituted against any debtor of the Estate. The Supreme Court in the case of Seabury v. Green, 294 U.S. 165, 169, 55 S.Ct. 373, 375, 79 L.Ed. 834, in interpreting the South Carolina law pertaining to this proposition said: "The decree of the court by which he (executor) was discharged, while having the effect of vacating the office, did not operate to extinguish the estate and so the administratrix de bonis non with the will annexed became the personal representative of the testator * * *."

The Supreme Court of South Carolina in the case of McNair v. Howle, 1922, 123 S.C. 252, 116 S.E. 279, held that the granting of a discharge to an administrator in accordance with the applicable code provisions does not conclusively determine that the estate has been wholly and completely wound up, further, that

under its broad constitutional and statutory powers, a Probate Court may appoint an administrator *de bonis non* after it has discharged the general administrator although the Order of Discharge has not been revoked.

Therefore, the Probate Court could have, if necessary, appointed an administrator *de bonis non* to collect the assets of the Anderson estate by asserting the illegality of the payment of excess commissions to the Executrix. Inasmuch as, the amount refunded by taxpayer represented the monies received by her in excess of the maximum allowable commissions and, inasmuch as such payment was illegally made to her, the result of a suit against her for such excess would, of necessity, have resulted in a judgment against her and a recoupment to the Estate of such amount for the benefit of the Estate and its creditors including the government as a creditor to the extent of its Federal Estate tax deficiency.

The record discloses that in the latter part of 1942, the Commissioner of Internal Revenue disallowed the amount received by the taxpayer representing the excess commissions paid to her under the Order of the Judge of Probate and, thereafter, she was informed of such disallowance. Apparently, for the first time she became acquainted with the fact that she had received and was in possession of illegal funds and was indebted to the estate in the amount of the funds received by her as excess commissions. She, thereupon, immediately reimbursed and restored to the Estate the excess commissions. It appears to me that the restoration of such funds under the circumstances was made in recognition of a legal obligation to restore the funds in question and her action in so doing eliminated the necessity of the reopening of the Estate and the expense incident to the same and to a suit against her for the illegal payments received by her. The only reasonable inference from the facts is that she restored to and reimbursed the Estate for the amount illegally allowed and received by her and for which amount she was a debtor to the Estate.

The record is not entirely clear as to the exact actions of the Commissioner of Internal Revenue in disallowing the excess and illegal commissions received by taxpayer. It is clear that the excess commissions were disallowed and that he assessed an additional Estate tax in 1943 which was paid by the Estate on or about March 15, 1943, part of such deficiency being paid with the funds refunded to the Estate by taxpayer.

■ The disallowance by the Commissioner of excessive commissions heretofore paid the taxpayer was the first notice or knowledge she had that she was in possession of illegal commissions and was tantamount to a demand on her for restitution. Though the assessment was made against the Estate of the decedent, yet, before the Commissioner could assess any beneficiary of the Estate individually as a transferee he must make every reasonable effort to collect the tax liability against the Estate. See Mertens Law of Federal Income Taxation, Vol. 9, Page 498. It, therefore, was his duty to collect the tax deficiency from the Estate and assert the liability of the taxpayer to the Estate for illegal funds held by her which were an asset of such Estate.

■ Deductions from income depend upon legislative grace. It is equally true, however, that power to tax income is derived from legislative enactment pursuant to the 16th Amendment of the Constitution. Therefore, when the Internal Revenue Code does not provide for the "claim of right" doctrine, but the Courts decide that equitable consideration necessitates its use, equitable consideration should be entertained when sums are refunded after being received under the "claim of right" doctrine.

■ The taxpayer, throughout the transactions involved, has acted in a spirit of fairness and with no apparent effort to, in any sense, defraud or cheat the government. When she received the

excess commissions allowed by the Probate Court she immediately reported the same and paid income tax thereon. The income tax paid by her on the excess commissions was substantially in excess of the Federal Estate tax which was assessed thereon. Subsequently, when she ascertained that she was in illegal possession of the funds in question, she immediately refunded the excess commissions to the Estate, and such funds actually were used in part payment of the additional Estate tax assessment caused in part by the disallowance of such excess commissions. She did not wait for the Court to render judgment against her or put the Estate to this expense, but, on the other hand, made restitution at once. This was done immediately after the Commissioner disallowed such excess commissions. She accepted the excess commissions, but the record shows clearly that she did so under a mistaken conception of the law and she has done everything that could humanly be done to rectify this mistake. She received the funds in question as commissions and the Courts so determined in 1941. She must, of necessity, have returned the same as commissions in 1943, particularly in view of the fact that the identical check received by her was returned to the Estate. It would indeed be a harsh rule which would permit the government to become unjustly enriched under such facts and circumstances.

When the taxpayer refunded the excess commissions to the Estate in 1943, she did not do so voluntarily, as contended by the government, but did so in recognition of her legal obligation so to do at that time. Her action in so doing eliminated the necessity of a legal action against her by the Commissioner to collect the sum in question as an asset of decedent's Estate. The excess commissions were illegally paid to her and she was in the illegal possession thereof and she could have been compelled to restore the same. Her action in doing so without the necessity of suit and judgment does not make the payment a voluntary one but, on the contrary, conforms not only to the spirit of the law but also to the principle announced in American Oil Consolidated v. Burnet, supra, Anderson v. Bowers and other cases.

### Order.

It being stipulated that the correct amount of taxpayer's refund claim for the year 1943, and for which the present suit is instituted, is about $7,199.93, plus interest as provided by law, but that a recomputation of plaintiff's tax liability for 1943, will be necessary in order to ascertain the correct amount, judgment is hereby rendered for the plaintiff against the defendant for the amount found to be due after a recomputation of the plaintiff's tax liability for 1943 has been made, plus interest; the defendant being hereby required to recompute immediately plaintiff's tax liability for 1943 and furnish plaintiff with a copy thereof, and

It Is So Ordered.