WORCESTER COUNTY NATIONAL BANK, petitioner.

Worcester. February 29, 1928. — May 23, 1928.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*National Bank*, Consolidation with trust company. *Probate Court*, Account. *Executor and Administrator*.

Upon a consolidation, under the provisions of § 2 of 40 U. S. Sts. at Large, 1044, as amended by the addition of a new § 3 by 44 U. S. Sts. at Large, Part 2, 1225, of a trust company organized and incorporated in this Commonwealth with a national bank, the national bank, although bearing a different name from that borne by it before the consolidation, is entitled to account as administrator of an estate, to which office it was appointed before the consolidation.

PETITION filed in the Probate Court for the county of Worcester on January 26, 1928, by "Worcester County National Bank of Worcester, Mass. (formerly Merchants National Bank of Worcester, Mass.) administrator of the Estate of Shubel C. Parsons, late of Worcester," for the allowance of the second and final account of such administrator.

The petition was heard in the Probate Court by *F. H. Chamberlain*, J. Facts found by him are stated in the opinion. He reported the facts and the questions of law, without further action, to this court for determination of the question, whether the petitioner was entitled to render the account.

Material portions of § 2 of c. 209 of 40 U. S. Sts. at Large, 1044, read as follows:

"And all the rights, franchises, and interests of the said national bank so consolidated in and to every species of property, personal and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such national bank into which it is consolidated without any deed or other transfer, and the said consolidated national bank shall hold and enjoy the same and all rights of property, franchises, and interests in the same manner and to the same extent as was held and enjoyed by the national bank so consolidated therewith."

Section 3, added to said c. 209 by 44 U. S. Sts. at Large, Part 2, 1225, 1226, reads in part as follows:

"That any bank incorporated under the laws of any State, or any bank incorporated in the District of Columbia, may be consolidated with a national banking association located in the same county, city, town, or village under the charter of such national banking association on such terms and consolidations as may be lawfully agreed upon by a majority of the board of directors of each association or bank proposing to consolidate, and which agreement shall be ratified and confirmed by the affirmative vote of the shareholders of each such association or bank owning at least two-thirds of its capital stock outstanding, or by a greater proportion of such capital stock in the case of such State bank if the laws of the State where the same is organized so require, at a meeting

to be held on the call of the directors after publishing notice of the time, place, and object of the meeting for four consecutive weeks in some newspaper of general circulation published in the place where the said association or bank is situated, and in the legal newspaper for the publication of legal notices or advertisements, if any such paper has been designated by the rules of a court in the county where such association or bank is situated, and if no newspaper is published in the place, then in a paper of general circulation published nearest thereto, unless such notice of meeting is waived in writing by all stockholders of any such association or bank, and after sending such notice to each shareholder of record by registered mail at least ten days prior to said meeting, but any additional notice shall be given to the shareholders of such State bank which may be required by the laws of the State where the same is organized. The capital stock of such consolidated associations shall not be less than that required under existing law for the organization of a national banking association in the place in which such consolidated association is located; and all the rights, franchises, and interests of such State or District bank so consolidated with a national banking association in and to every species of property, real, personal, and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such national banking association into which it is consolidated without any deed or other transfer, and the said consolidated national banking association shall hold and enjoy the same and all rights of property, franchises, and interests including the right of succession as trustee, executor, or in any other fiduciary capacity in the same manner and to the same extent as was held and enjoyed by such State or District bank so consolidated with such national banking association . . . . .

"The words 'State bank,' 'State banks,' 'bank,' or 'banks,' as used in this section, shall be held to include trust companies, savings banks, or other such corporations or institutions carrying on the banking business under the authority of State laws."

*W. T. Forbes*, for the petitioner, submitted a brief.

No argument nor brief for the respondent.

RUGG, C.J. This case is reported on a finding of material facts for determination by the full court. of the question of law whether the petitioner is entitled to render the account. The relevant facts are that the Merchants National Bank of Worcester, located at Worcester in the county of Worcester in this Commonwealth, a national bank organized under the laws of the United States, was appointed in October, 1924, administrator of the estate of the decedent and qualified by giving bond. No change in the administration is disclosed on the records of the appointing court. By certificate of the comptroller of the currency dated June 27, 1927, it appears that the directors and shareholders of the Merchants National Bank of Worcester and the directors and shareholders of Fitchburg Bank and Trust Company, a corporation organized under the laws of this Commonwealth and doing business at Fitchburg in said county of Worcester, were consolidated under the charter of the Merchants National Bank of Worcester and under the corporate title of Worcester County National Bank of Worcester, and that the consolidation was approved, all in compliance with an Act of Congress entitled, "An Act to provide for the consolidation of national banking associations," approved November 7, 1918, c. 209, § 2, 40 U. S. Sts. at Large, 1044, as amended by the addition of a new § 3 by an Act of Congress approved on February 25, 1927, c. 191, § 1, 44 U. S. Sts. at Large, Part 2, 1224, 1225. A State bank is authorized by said § 3 to be consolidated with a national banking association under the charter of such national banking association upon specified terms. It is provided by said § 3 in substance that all the rights, franchises and interests of such State bank, so consolidated, in and to every species of property, shall be deemed to be vested in the national banking association into which it is consolidated, and that such consolidated national banking association shall hold and enjoy the same.

The original appointment of the national bank as administrator was authorized by law. It was valid when made. It is provided by G. L. c. 172, § 52, that a trust company organized under the laws of this Commonwealth may be appointed an administrator of the estate of a deceased person

and to other fiduciary positions. By Act of Congress approved September 26, 1918, c. 177, § 2, 40 U. S. Sts. at Large, 968, amending the Federal reserve act of December 23, 1913, c. 6, § 11 (k), 38 U. S. Sts. at Large, 262, as interpreted by *First National Bank of Bay City* v. *Fellows*, 244 U. S. 416, and *Burnes National Bank of St. Joseph* v. *Duncan*, 265 U. S. 17, the courts of this Commonwealth are required to appoint national banks to such fiduciary positions upon the same conditions as they would appoint trust companies organized under the laws of this Commonwealth, although no authority to make such appointment is found in the statutes enacted by the General Court of this Commonwealth. Of course we recognize the binding force of these decisions of the Supreme Court of the United States.

It is unnecessary for the decision of this case to determine whether the trust company lawfully could consolidate with the national bank, because we are of opinion that the legal obligation of the national bank appointed by the court to administer this estate is not in any respect impaired by what has taken place with respect to consolidation with the trust company under said § 3. The national bank has not been extinguished, dissolved or essentially altered by the form of consolidation under said § 3, whether that consolidation be treated as lawful and effective or as unauthorized and futile. Plainly, if it be the latter, the obligation of the national bank to administer the estate remains in full force. That obligation, lawful at its inception, has not been diminished, enhanced or changed thereby any more than it would be by any other *ultra vires* act of the national bank. If the consolidation be treated as lawful and effective, the national bank is the corporation now existing and operative. By the terms of said § 3 the consolidation was "under the charter" of the national bank. That bank has continued to exercise all its functions without modification, under the same charter, in the same manner and under the same legal sanctions and authorization since the consolidation as before. No new charter has been issued to it. The certificate of approval of the consolidation by the comptroller of the currency is in no sense a new or modified charter. It is no more than a

formal expression by the comptroller of the currency of his approval of the consolidation. The corporate identity of the national bank has continued unaffected by anything in connection with the consolidation. Its corporate existence under the same charter, subject to the same laws, and owing fealty to the same jurisdiction, has persisted without change. Its financial resources may have been increased or diminished by the addition of the assets of the trust company and the assumption of its debts, but its obligations and duties, not arising out of the consolidation, abide in full force and effect as if there had been no consolidation. Among the duties and obligations which endure undisturbed by the consolidation is the trust to continue and finish the administration of the estate of the decedent.

The simple change of name of the national bank did not disturb its corporate identity or continuity of existence, which has remained uninterrupted. See Act of Congress of May 1, 1886, c. 73, § 2, 24 U. S. Sts. at Large, 18.

The case at bar is distinguishable from *Commonwealth-Atlantic National Bank of Boston, petitioner*, 249 Mass. 440 (certiorari denied, 266 U. S. 617), where it was held that the right to be appointed executor under a will, wherein a trust company organized under our laws was named as executor, did not pass to a consolidated national bank consisting of two national banks consolidated under said c. 209, 40 U. S. Sts. at Large, 1043, into one of the constituent national banks in which consolidation the trust company so named as executor had been converted under U. S. Rev. Sts. § 5154. It is also distinguishable from *Commonwealth-Atlantic National Bank of Boston, petitioner*, 261 Mass. 217, where, with reference to the same conversion of trust company and consolidation of national banks, it was held that such consolidated national bank was not entitled to account in the court of probate as a trustee under an appointment of the trust company as trustee. In those decisions there was full recognition of the requirement of the Act of Congress of September 26, 1918, c. 177, § 2, 40 U. S. Sts. at Large, 968, as interpreted by *First National Bank of Bay City* v. *Fellows*, 244 U. S. 416, and *Burnes National Bank of St. Joseph* v.

*Duncan,* 265 U. S. 17, to the effect that courts of this Commonwealth must appoint national banks to certain fiduciary positions upon the same conditions as they would appoint local trust companies; but it was determined that the courts in the particular circumstances disclosed had a right to adjudicate and determine upon a new petition, whether the particular national bank conformed to the general standards demanded by the laws and established practice of this Commonwealth for the appointment of executors and similar fiduciaries, and that such a trust did not pass as of right from the State trust company to the consolidated national bank without the approval of the court. That principle is not applicable to the case at bar, where the national bank originally appointed to the trust has maintained an unbroken and unchanged identity of corporate existence in the administration of the trust reposed in it to administer the estate of the decedent.

It is not necessary to discuss the validity, force or effect of the provision of said § 3 that the consolidated national bank shall hold and enjoy "the right of succession as trustee, executor, or in any other fiduciary capacity in the same manner and to the same extent as was held and enjoyed by such State . . . bank so consolidated with such national banking association." That question is not involved in the narrow issue here presented. If that provision should be held to be invalid, we are of opinion that it is capable of separation from the other portions of the act, which may be enforced independently. That provision is not so connected with and dependent upon other clauses of the act as to constitute an essential factor of the whole. The apparent intent of the Congress as expressed in other parts of the act may be effectuated without impairment even if this provision be stricken down. The dominant purpose of the act was to permit the direct consolidation of a State bank or a bank of the District of Columbia with a national bank, something not theretofore permitted. That main design would not be affected in a vital aspect even if this purely incidental provision were held nugatory. *Huntington* v. *Worthen,* 120 U. S. 97. *International Text Book Co.* v. *Pigg,* 217 U. S.

91, 113.  *Warren* v. *Mayor & Aldermen of Charlestown*, 2 Gray, 84, 98, 99.  *Lawton Spinning Co.* v. *Commonwealth*, 232 Mass. 28, 32.

Our conclusion is that the petitioner is entitled to render the account.   It has been found that the account is in proper form and should be allowed if the Worcester County National Bank of Worcester is entitled to render the account.   It follows that decree should be entered allowing the account.

*Ordered accordingly.*