### 13142

RIVERS *ET AL.* v. McINTIRE, ADMX.

(158 S. E., 816)

April, 1930.

*Shepard K. Nash,* for appellant,

*Messrs. W. F. Stevenson* and *L. C. Wannamaker,* for respondents,

May 15, 1931.

The opinion of the Court was delivered by Mr. Justice Cothran.

This is an appeal from an order of his Honor, Judge Dennis, sustaining a demurrer to the third defense of the answer, interposed by the plaintiffs. The action is by the plaintiffs as receivers of the "Bank of Cheraw and Chesterfield County," styling themselves "Receivers of the stockholders liability of the Bank of Cheraw and Chesterfield County," for the benefit of the depositors of that bank, against the defendant as administratrix of the estate of Mrs. Mary B. Malloy, deceased, who is alleged to have held 36 shares of the capital stock of said bank, par value $1,800.00. Judgment is sought against the administratrix for $1,800.00, with interest from September 15, 1929. It was commenced on November 15, 1929.

The defendant in her answer set up a third defense, as follows:

"1. On information and belief, this defendant alleges that an attempt was made in February, 1928, to merge the Bank of Cheraw, a corporation organized under the laws of South Carolina, with the Bank of Chesterfield County, likewise a corporation under the laws of South Carolina, thereby attempting to form one corporation out of two said corporations, and that the alleged new corporation assumed the name of the Bank of Cheraw and Chesterfield County.

"2. That neither the charter of the Bank of Cheraw nor the charter of the Bank of Chesterfield County authorized or empowered either of said corporations to consolidate, merge or form a new corporation.

"3. That neither this defendant nor the said Mrs. Mary B. Malloy has ever consented to the attempted consolidation, merger or formation of a new corporation, nor has any stock in the new corporation been issued to the said Mary B. Malloy, nor has it been issued to this defendant.

"4. That by reason of the said attempted consolidation, merger or formation of a new corporation, the stock of the Bank of Cheraw was rendered wholly worthless and of no value.

"5. That the attempted consolidation or merger of the banks aforesaid was made, so this defendant is informed and believes, under an Act of the General Assembly of South Carolina known as Act No. 169 of the Acts of 1925 the title of which said Act is as follows:

" 'An Act to Authorize and Provide for the Merger or Consolidation of Corporations, and to Define the Powers and Duties, Rights and Liabilities Thereof, When Merged or Consolidated.'

"And that Act itself relates not only to the merger or consolidation of corporations and defines the powers and duties, rights and liabilities thereof, but also relates to the liabilities and obligations of the dissenting stockholders thereof, thus embracing two or more subjects, one of which is not disclosed in the title thereto, and is, therefore, contrary to Article 3, Section 17 of the Constitution of South Carolina, and is for this reason illegal, unconstitutional, null and void.

"6. That the said Act No. 169, Acts of the General Assembly of 1925, is illegal, unconstitutional, null and void, in that it attempts to impair the obligation of the contract between the Bank of Cheraw and its stockholders, and for this reason is contrary to Article 1, Section 8, of the Con-

stitution of South Carolina, and Article 1, Section 10 of the Constitution of the United States, so this defendant is informed and believes."

The plaintiffs served notice of a motion for an order striking out the third defense upon the ground that it did not state facts sufficient to constitute a defense, practically a demurrer thereto, the specifications of which are as follows:

"(a) The answer admits that the defendant was a stockholder in the Bank of Cheraw which consolidated with the Bank of Chesterfield County and became the Bank of Cheraw and Chesterfield County; and alleges, in effect, that inasmuch as she did not convert her stock she did not become a stockholder in the consolidated bank, though the statute sets out the course she should have pursued to avoid becoming a stockholder therein; and she does not allege that she pursued that course, and

"(b) The defendant relies on the unconstitutionality of the statute under which the said consolidation was made on two grounds, to wit, (1) that the statute related to more than one subject which, under the decisions of the Supreme Court, is incorrect, and (2) that the said statute impaired the obligations of her contract with the State, in that the charter of the Bank of Cheraw was granted prior to the passage of the Act and did not contain a provision for consolidation, which contention is untenable, because the Constitutions of 1868 and 1895 provide that all charters granted under general laws are amendable and revokable by the Legislature."

The motion was heard by his Honor, Judge Dennis, who filed an order, dated April 19, 1930, as follows:

"The defendant Robbie E. McIntire, in the third defense of her answer in this case, raises the question of the constitutionality of the Act (No. 169) of 1925 which authorizes the merger and consolidation of corporations, on the ground that it relates to two subjects whereas only one sub-

ject is named in the title, and on the further ground that, as relates to charters granted prior to the passage of this Act, it was an impairing of the charter rights of the stockholders in providing for the consolidation of such corporations.

"Plaintiffs' attorney moves to strike out the third defense on the ground that it does not state facts sufficient to constitute a defense.

"This motion is sustained, as a casual reading of the Act in question will show that it relates to but one subject only and provides for the necessary details in carrying out the consolidations authorized thereunder. Neither is it subject to be assailed on the ground that it affects the rights of stockholders under charters granted prior to its passage, for the reason that the Constitution of 1868, the General Statutes of 1882 and the Constitution of 1895 all reserve the right to amend, alter or repeal any charter granted by the State of South Carolina; and the right to the stockholders is no higher than the right to the corporation itself, as the corporation is but the aggregate power of the stockholders.

"It is therefore ordered, That the motion be sustained and that the said third defense be stricken from the answer."

From this order the defendant has appealed upon the ground hereinafter discussed, with others which we do not deem it necessary to consider.

It appears from the allegations of the defense demurred to, and from the statements of counsel for the respondents, that the Bank of Cheraw was incorporated in July, 1887; in April, 1926, it was consolidated, under the Act of 1925, 34 Stat., 246, with the Merchants' & Farmers' Bank of Cheraw under the name of the Bank of Cheraw; Mrs. Malloy, who held stock in one of the constituent banks, became a stockholder of the new corporation; in January 1928, this consolidated bank, the Bank of Cheraw, was consolidated, under the Act of 1925, with the Bank of Chesterfield County, under the name of the Bank of Cheraw &

Chesterfield County; the consolidation under the Act was regular; Mrs. Malloy appears to have been unconcerned in reference to the consolidation, made no objection, entered no consent or dissent; she received no certificates of stock in the last-consolidated bank, the Bank of Cheraw & Chesterfield County, and does not appear to have participated in any way as a stockholder thereof; the bank failed in November, 1928, the plaintiffs being appointed receivers thereof.

It will be observed that the present action is brought by the receivers of the Bank of Cheraw & Chesterfield County, for the benefit of the depositors of that bank and against the administratrix of Mrs. Malloy, who is alleged to have been a stockholder of the bank. As a matter of fact, alleged in the answer and admitted of course by the demurrer, Mrs. Malloy was never a stockholder of the last-consolidated bank; and, unless she was, she assumed no obligations to the depositors thereof. The Act of 1925 provides: "Each stockholder in either of the constituent corporations at the time the consolidation becomes effective, who is entitled to vote and who does not vote against the consolidation * * * shall cease to be a stockholder in such constituent corporation and shall be deemed to have assented to the consolidation together with the stockholders voting in favor thereof in the manner and on the terms specified in the agreement of consolidation." Section 3.

From this, the plaintiffs contend that, as Mrs. Malloy made no objection to the consolidation, and under the Act is presumed to have assented to it, she is presumed to have become a stockholder in the consolidated bank. We do not think that this at all follows, for there is nothing in the Act so declaring. It is entirely possible that she may have not desired to so become, and would prefer that her interest as a stockholder in the constituent corporation might perish. Many a stockholder in these latter days

of painful experience would be glad to give away their bank stock if they could find a willing donee. If the depositors of the new bank desired to enjoy the security afforded by the stockholders' statutory liability, it was incumbent upon them to make sure that nonobjecting old stockholders qualified as stockholders of the new corporation; there is no way to make them become so.

In 14a C. J., 1068, it is said: "The terms and construction of some statutes are such that on the completion of a consolidation thereunder, the stockholders of the original corporations become stockholders of the consolidated corporation. However a statute which authorizes the sale and transfer of the whole of the business rights and property of one company to another company and authorizes such purchase by the latter company does not, in the absence of clear and precise language to that effect, constitute the stockholders of the selling company stockholders in the purchasing company. Also under some consolidation agreements the stockholder may decline to accept stock in the consolidated company; and frequently the situation is such that dissenting stockholders do not *ipso facto* become members of the new company or bound to accept stock therein."

As regards dissenting stockholders who have actively opposed a consolidation, although they will be bound by the action of a majority of each constituent corporation, we find nothing in the statute which requires that they become stockholders of the new corporation; they may not desire to become so and might prefer that their old stock be canceled, which would be the effect of the consolidation. A stockholder who took no action at all would not be in a worse fix than the active malcontents.

The rule is well recognized that the consolidated corporation is a new corporation distinct from the constituent corporations. The latter are of course possessed of different assets and have incurred different liabilities; their capital stocks are not the same; and, if it

should be desired to issue new certificates of the new corporation for the outstanding certificates of the old, an adjustment is absolutely necessary, and until that should be done there is no way to tell what distribution of the new stock is to be made. See 7 R. C. L., 169.

We have not considered the possible effect of the terms of the consolidation agreement upon the status of a stockholder in Mrs. Malloy's position, nor of such conduct on her part as might work an estoppel.

The judgment of this Court is that the order sustaining the demurrer be reversed.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE COSGROVE concur.