13621.

RIVERS *ET AL.*, REC'RS, v. STEVENSON

(169 S. E., 135)

November, 1928.

*Messrs. C. L. Hunley, J. A. Knight, L. C. Wannamaker* and *P. A. Murray, Jr.,* for appellants,

*Messrs. John D. Nock* and *W. M. Stevenson,* for respondent,

April 12, 1933.

The opinion the Court was delivered by Mr. Justice Stabler.

The facts of this case are few and in the main undisputed. On April 11, 1916, J. T. Moore transferred to W. F. Stevenson, as trustee for the purposes named in the trust agreement, stock in the Merchants' & Farmers' Bank of Cheraw of the par value of $4,800.00. On October 2, 1926 (after the death of Moore), this bank was absorbed by the Bank of Cheraw, and in place of the $4,800.00 worth of stock Stevenson, as trustee, received on that date stock in the latter bank of the par value of $1,900.00, a certificate for such stock being accepted by him. In January, 1928, a consolidation was effected, as provided by an Act of 1925 (Act April 14, 1925, 34 Stat. at Large, p. 246), by the Bank of Cheraw and numerous other banks in the county, under the name of Bank of Cheraw & Chesterfield County. On November 13, 1928, this bank was closed because of insolvency, and on November 15 suit was commenced by some of its depositors to collect the statutory liability of certain alleged stockholders. Later, by order of the Court, the receivers of the bank were substituted as plaintiffs.

The matter was referred to the master of Chesterfield County, who concluded that the defendant was not a stockholder in the consolidated bank, and was not, therefore, liable for the statutory assessment. He found and reported as a matter of fact: "The trustee did not participate in any way in the planning and accomplishment of the consolidation of the Bank of Cheraw and the Bank of Chesterfield County into the Bank of Cheraw and Chesterfield County or the proceedings relating to the consolidation. No shares

of stock in the consolidated bank were ever issued or delivered unto the defendant-trustee. No dividends were ever paid by the Bank of Cheraw and Chesterfield County. There is an entire absence of any evidence showing any acts or conduct on the part of the trustee whereby he is estopped from claiming that the shares held by him as trustee were abandoned."

Hon. E. C. Dennis, Circuit Judge, by his decree dated May 13, 1932, made the master's report the judgment of the Court, giving the following as an additional reason for its adoption: "The testimony shows that the bank stock held by W. F. Stevenson, as trustee of the estate of James T. Moore, constituted the entire *corpus* of the estate; furthermore the instrument creating the trust provides that the trustee shall merely collect the dividends and pay them to the *cestui que* trust. He had no power or authority to invest or re-invest or change the *corpus* of the estate in any way."

The question presented for our consideration is whether the respondent became a stockholder of the consolidated bank either under the provisions of the statute and the consolidation agreement executed pursuant thereto, or by estoppel, and consequently is subject to the statutory liability as such.

The Act of 1925 was incorporated in the Code of 1932 as Sections 7757-7763, under the heading of "Merger and Consolidation of Corporations." Section 7759 provides that "each stockholder in either of the constituent corporations at the time the consolidation becomes effective, who is entitled to vote and who does not vote against the consolidation * * * shall cease to be a stockholder in such constituent corporation and shall be deemed to have assented to the consolidation together with the stockholders voting in favor thereof in the manner and on the terms specified in the agreement of consolidation."

Counsel for appellants argue that, when the Act says that the nonobjecting stockholder is "deemed to have assented to the consolidation * * * in the manner and on the terms specified in the agreement of consolidation," it means that such stockholder agrees to accept shares of stock in the consolidated corporation in the place of his shares in the constituent corporation according to the terms of the agreement of consolidation, and that he is thereby made and becomes a stockholder in the new corporation. The recent case of *Rivers et al. v. McIntire, Adm'x,* 160 S. C., 462, 158 S. E., 816, 817, is conclusive against this contention. That case was an action by the same receivers of the same bank against R. E. McIntire, as administratrix of the estate of Mary B. Malloy. The third defense pleaded was "that neither this defendant nor the said Mrs. Mary B. Malloy has ever consented to the attempted consolidation, merger or formation of a new corporation, nor has any stock in the new corporation been issued to the said Mary B. Malloy, nor has it been issued to this defendant." The plaintiffs moved to strike out this defense upon the ground of insufficiency. The Circuit Judge sustained the motion, but was reversed on appeal. This Court in its opinion, speaking through Mr. Justice Cothran, pointed out that, unless Mrs. Malloy was a stockholder in the consolidated bank, she assumed no obligations to the depositors thereof; and, after quoting that portion of Section 7759 above referred to, observed: "From this, the plaintiffs contend that, as Mrs. Malloy made no objection to the consolidation, and under the Act is presumed to have assented to it, she is presumed to have become a stockholder in the consolidated bank. We do not think that this at all follows, for there is nothing in the Act so declaring. It is entirely possible that she may have not desired to so become, and would prefer that her interest as a stockholder in the constituent corporation might perish. Many a stockholder in these latter days of painful experience would be glad to give away their bank

stock if they could find a willing donee. If the depositors of the new bank desired to enjoy the security afforded by the stockholders' statutory liability, it was incumbent upon them to make sure that nonobjecting old stockholders qualified as stockholders of the new corporation; there is no way to make them become so."

And further declared: "As regards dissenting stockholders who have actively opposed a consolidation, although they will be bound by the action of a majority of each constituent corporation, we find nothing in the statute which requires that they become stockholders of the new corporation; they may not desire to become so and might prefer that their old stock be canceled, which would be the effect of the consolidation. A stockholder who took no action at all would not be in a worse fix than the active malcontents."

Turning to the agreement of consolidation, which ■ was not before the Court in the *McIntire case*, we find nothing in it which binds a nonobjecting stockholder of one of the constituent banks as a stockholder in the new bank. Under the statute the constituent banks were empowered to prescribe prerequisites for stock ownership in the new bank; and the agreement entered into provides that those stockholders of the constituent banks who surrendered their old stock for exchange and cancellation, would have issued to them stock in the new bank. In the words of the agreement itself, the consolidated bank would issue its stock in exchange for stock of the constituent Bank of Cheraw "upon surrender to it for exchange and cancellation of certificates for said stock properly endorsed." The appellants argue, however, that the issuance of certificates of stock is only evidence of its ownership, and hence failure to get a stock certificate does not prevent accrual of the stockholders' liability, that this liability is not attempted to be imposed by the 1925 statute, but that the contract was made by the respondent when he took the course by which, under the law, he was "deemed" to have assented to the contract,

and that he thereby contracted to allow his share of the assets of the constituent bank to become the property of the new bank in payment for stock in that institution. The respondent concedes that a subscriber to stock in a corporation becomes a stockholder, although the certificate of stock was not delivered; but argues that, since he was not a subscriber to the stock in the new bank, and did not participate in the consolidation proceedings, the only way in which he could become a stockholder in the new bank would be by compliance with the express provisions of the statute and of the terms of the consolidation agreement, namely, by surrendering his certificate of stock in the constituent bank and accepting the certificate of stock in the consolidated bank in place thereof. We think respondent's contention is meritorious; and, as it is conceded that he never surrendered the stock held by him in the Bank of Cheraw for exchange and cancellation for stock in the new bank, his position must be sustained.

Nor do we find that respondent is estopped, by reason of conduct or act, to assert his rights and to deny the liability sought to be fixed upon him. It is admitted that he took no part in the consolidation proceedings; he neither dissented nor consented. As found by the master, no dividends were ever paid by the new bank, and respondent's name did not appear upon its books as a stockholder. As the facts could readily have been ascertained by any one interested, it cannot now be successfully argued that the respondent is bound by representations contained in, or inferences deducible from, published advertisements of the new bank relative to the amount of its capital stock, which appellants claim included the amount of respondent's stock held by him in the old Bank of Cheraw.

With regard to the question of abandonment, we have carefully examined the citations made by counsel for the appellants in support of their position, but find that they are not applicable under the facts of this case. The question

before us here is not respondent's status as to the stock owned by him in the constituent Bank of Cheraw, but whether he ever acquired stock in the consolidated Bank of Cheraw & Chesterfield County. As pointed out in the *McIntire case,* his liability can be based only upon ownership of stock in the latter, and, as we have held that he never became a stockholder therein, either by contract or by estoppel, the question of abandonment cannot affect the decision of the case.

We agree with the Circuit Judge that the trustee had no power under the instrument creating the trust to invest or reinvest or change the *corpus* of the estate. It appears from such agreement that no change could be made in the *corpus* except upon the written request of the executors to sell the same and reinvest the proceeds in good real estate securities. It would seem, therefore, that the trustee was without power to exchange the stock, even if he had been inclined to do so. See *Bass v. Adams,* 163 S. C., 381, 161 S. E., 697. However, the Circuit Judge might properly have rested his decision entirely upon the reasons stated by the master in his report.

The decree of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.