## 14159

### HOOD v. CANNON

(182 S. E., 306)

*Messrs. Carlisle, Brown & Carlisle,* for appellant,

*Messrs. Evans, Galbraith & Holcombe,* for respondent,

November 4, 1935.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This was an action brought in October, 1934, by Gurney P. Hood, as commissioner of banks for the State of North Carolina, as plaintiff, against Simpson F. Cannon, as trustee

of the estate of J. H. Sloan, deceased, as defendant, to recover the stockholder's statutory liability (Pub. Laws N. C., 1921, c. 4, § 21, as amended by Pub. Laws N. C., 1933, c. 159, § 1) provided for by the laws of the State of North Carolina, on 93 shares of the capital stock of the North Carolina Bank & Trust Company, having a par value of $930.00. The answer of the trustee admitted the formal portions of the complaint, but denied the remaining allegations, and further answered as follows: "That J. H. Sloan, now deceased, was never the owner or holder of any shares of the capital stock of North Carolina Bank and Trust Company, and no such shares of stock were contained among the original assets of the estate of J. H. Sloan, deceased; and if any were acquired after the death of the said J. H. Sloan by any predecessor trustee of his said estate, such acquisition of stock was unwarranted, unauthorized, illegal and void, and operated neither to vest title of any such stock in such trustee nor to impose any liability upon the said estate."

In 1907, J. H. Sloan departed this life, leaving of force his last will and testament, in which he named and appointed the Southern Trust Company, as trustee, "to hold the said estate and pay over the said income as herein directed." Among the assets of J. H. Sloan were found 14 shares of Murchison National Bank stock of the par value of $100.00 each.

Some time prior to October 2, 1929, the trustee, Southern Trust Company, was notified of a merger and consolidation of banks in North Carolina, by which the Murchison National Bank was merged into a corporation, known as the North Carolina Bank & Trust Company. The newly formed corporation requested the said trustee to send in the Murchison National Bank certificates in order that it might issue to said trustee a *pro-rata* share of the stock of the North Carolina Bank & Trust Company.

On October 2, 1929, the Southern Trust Company, as trustee, filed an *ex parte* petition in the Probate Court for

Spartanburg County for the purpose of gaining the sanction and authority of the said Probate Court to exchange the Murchison National Bank stock for stock as heretofore stated. None of the beneficiaries were made parties to this proceeding, although some of them reside within the borders of this State and some are minors. The Probate Court on October 2, 1929, issued its order purporting to give the trustee authority to make the said exchange of stock.

On March 3, 1933, the North Carolina Bank & Trust Company closed its doors and has not since opened its portals for general banking purposes. The stock, at the time the bank closed, stood in the name of Southern Trust Company, as trustee of the estate of J. H. Sloan. On October 29, 1932, by an order of his Honor, Judge T. S. Sease, Simpson F. Cannon was appointed as trustee of the estate of J. H. Sloan, to succeed the Southern Trust Company.

An agreed statement of facts, the foregoing history of the case being gathered therefrom, was submitted to the Court, and the matter was argued before his Honor, Judge H. F. Rice, at the March, 1935 term of the Court of Common Pleas for Spartanburg County. On April 8, 1935, Judge Rice filed an order adjudging and decreeing that Simpson F. Cannon, as trustee of the estate of J. H. Sloan, was not liable for the assessment in issue, and that he have judgment accordingly. In due time plaintiff-appellant served notice of intention to appeal to the Supreme Court.

The appellant has filed five exceptions to the order of Judge Rice, but the decision of this case does not involve as many questions, and may be decided by the determination of only three questions, to wit:

1. Did the order of the Probate Court, rendered in an *ex parte* proceeding by the trustee, the Southern Trust Company, and to which none of the beneficiaries of the trust were made parties, confer on the said trustee authority to exchange the stock of Murchison National Bank for the

stock of North Carolina Bank & Trust Company, a state bank, thereby binding the trust estate?

2. Did the trust estate of J. H. Sloan, deceased, ever become a stockholder of the North Carolina Bank & Trust Company?

3. Can the judgment of the Probate Court be collaterally attacked?

As heretofore stated, an *ex parte* proceeding was instituted in the Probate Court by the Southern Trust Company, as trustee of the estate of J. H. Sloan, for the purpose of gaining the sanction and authority of that Court to exchange the stock of the Murchison National Bank for a *pro-rata* share of stock in the newly formed North Carolina Bank & Trust Company. At the outset, it is admitted by the appellant that none of the beneficiaries of the trust were made parties to the Probate Court proceedings, the ultimate result of which has transformed their assets to liabilities; and yet, some of these beneficiaries were residing at the time within the borders of this State and some were minors.

This *ex parte* proceeding is clothed and shrouded with every hue of an equitable proceeding, and in order to determine the rights and liabilities of these parties we must direct our attention to such pertinent equity principles as are adopted and applied in the Courts of this State.

In the case of *Ex parte Adam Tunno,* Bailey, Eq., 395, which was a proceeding brought by Adam Tunno, as trustee, to which the beneficiaries were not made parties for the purpose of procuring an order of the Court to transfer trust property from this State to the State of Pennsylvania, the Court, with reference to the necessity of making the beneficiaries parties, had this to say: "The only difficulty is in the fact, that the *cestui que* trust in remainder are minors, and not parties. It would, perhaps, be well, before a final order is made, that they should, in some shape, be made parties to this proceeding."

In the case of *Moseley v. Hankinson,* 22 S. C., 323, the Court, with reference to the power of the trustee to represent the beneficiary, had this to say: "It may be said that the truste who was invested with the fee in the legal estate being before the Court he could represent, and did represent, the interests of all the parties, and there is some countenance for this suggestion in a dictum of Chancellor Dargan in *Williman v. Holmes,* 4 Rich. Eq. [475], at page 490, 491; but we think a more correct view is taken by Chancellor Wardlaw in *Moore v. Hood,* 9 Rich. Eq. [311], at page 325, 70 Am. Dec., 210, where he says: 'The rule requiring beneficiaries to be parties where they are interested in the questions for adjudication is applicable although the trustee have the legal title, for trustees are not the real owners of the trust estate, and are rather agents of the beneficiaries for the execution of certain trusts, and it is among their duties to require the real owners to be brought before the court.' Any other view, it seems to us, would logically lead to the conclusion that a trustee might convey without any order of the Court. The very object of applying to the Court is to obtain authority for disposing of the interests of others, and those really entitled to such interests must, if practicable, be made parties to any proceeding by which it is proposed to dispose of their interests."

In the case of *Thomson v. Peake,* 38 S. C., 440, 17 S. E., 45, 48, 725, the Court with reference to the power of the trustee to convey trust property, had this to say: "It is not in the power of a trustee to convey a trust estate in his or her hands, as such, unless such power is conferred by the instrument creating the trust, or unless under an order of court in an action between the parties whose interests are to be so affected."

It was certainly practicable, in view of the admitted fact that some of the beneficiaries reside within the borders of this State, to bring them before the Court; and, according to the former decisions of this Court, it is

indispensable that the beneficiaries be made parties to any proceeding brought for the purpose of adjudicating their interests. The sole purpose of this proceeding in the Probate Court was to adjudicate a question in which the beneficiaries had a vital interest.

It might be contended that this case does not involve a transfer of trust assets beyond the jurisdiction of the Courts of this State, as in the case of *Ex parte Adam Tunno, supra,* or a conveyance of trust property, as in the cases of *Thomson v. Peake* and *Moseley v. Hankinson, supra;* but it is sufficient answer to this contention to quote from the language of this Court in the case of *Bass et al. v. Adams et al.,* 163 S. C., 381, 161 S. E., 697, 704, to show that identically the same legal procedure is necessary to change a trust investment as to transfer or convey trust property, wherein Mr. Justice Carter, as the organ of the Court, had this to say: "It does not need the citation of authority to sustain the position that the change of the investment of a trust fund can be made only by the provision of the instrument creating the trust—or by order of court."

It is admitted by the appellant that the trust instrument did not contain any provision directing a change of investment; and the order of the Probate Court, purporting to authorize the change, is fatally defective, due to the failure to at least bring the resident beneficiaries before the Court. Therefore, the first question must be answered in the negative.

The next question for determination is whether the trust estate ever became a stockholder of the North Carolina Bank & Trust Company.

The will of J. H. Sloan, as has already been stated, did not contain any provision which would authorize a change of investment, but, on the contrary, merely provided that the trustee should hold the estate and pay over the income to the beneficiaries. There was only one other avenue by which the trustee could change the investment and bind the trust fund,

as a stockholder of the North Carolina Bank & Trust Company, and that was by order of a Court of competent jurisdiction, rendered in a proceeding to which the parties interested in the questions for adjudication were made parties. This was not done.

In the case of *Bass et al. v. Adams et al., supra,* the trustee had changed the investment of the trust fund, contrary to the terms of the trust instrument, and there was no affirmative proof that the beneficiaries were ever notified or had any knowledge of the change, therefore, the Court held that the trust estate was never transferred so as to become a part of the stock of the new bank formed by the merger of the other banks.

It has already been shown that the Probate Court judgment was fatally defective; therefore, it was null and void and could not authorize the trustee to change the investment of the trust fund. Consequently, the inescapable conclusion is that the trust estate never became a stockholder of the North Carolina Bank & Trust Company.

The next question to be determined is whether the void judgment of the Probate Court may be collaterally attacked in this proceeding.

In the case of *Woods v. Bryan,* 41 S. C., 74, 19 S. E., 218, 220, 44 Am. St. Rep., 688, the Court, with reference to collateral attacks on judgments, quotes with approbation from the case of *Turner v. Malone,* 24 S. C., 398, 401, the following language: " 'If the infirmity appears in the record itself, that is, no doubt, conclusive; and the judgment may be disregarded as a nullity whenever and wherever it is encountered, in any proceeding, direct or collateral, as in the cases of *Hill v. Robertson,* 1 Strob., 1; *Bull v. Rowe,* 13 S. C., 355; and *Clark v. Melton,* 19 S. C., 498.' "

Again in the case of *Piedmont Press Ass'n v. Record Pub. Co. et al.,* 156 S. C., 43, 152 S. E., 721, 726, the Court, with reference to collateral attacks on judgments, quoted with approval from *Scott v. Newell,* 146 S. C., 385, 144 S.

E., 82, as follows: " 'A judgment may be attacked collaterally only when its defects and infirmities are apparent by an inspection of it. *Finley v. Robertson,* 17 S. C., 435; *Tederall v. Bouknight,* 25 S. C., 275; *Turner v. Malone,* 24 S. C., 398.' "

A mere inspection of the judgment of the Probate Court discloses that, under the law, as expounded by the able jurists who have graced the bench of this Court, there is a fatal defect in the judgment, in that, indispensable parties were not made parties to the Probate Court proceedings.

It is the judgment of this Court that all exceptions be overruled, and the order of the Circuit Judge affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Bonham and Fishburne concur.