**DIXON v. CANNON et al.**

District Court, W. D. South Carolina.
March 22, 1940.

Donald Russell, of Spartanburg, S. C., for plaintiff.

B. F. Martin, of Greenville, S. C., and Perrin & Tinsley and Evans, Galbraith & Holcombe, all of Spartanburg, S. C., for defendants.

LUMPKIN, District Judge.

This action, heard before me by agreement without a jury upon an agreed stipulation of facts hereby adopted as findings of fact herein under Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A. following section 723c, involves the right of the plaintiff as receiver of the insolvent First National Bank of Spartanburg, South Carolina, to recover of the trust estate created under the will of J. H. Sloan, deceased, a stock assessment duly levied by the Comptroller of the Currency against 185 shares of the capital stock of such insolvent national bank, registered at its suspension in the name of said trust estate.

As stated, the facts out of which the action arises have been stipulated and are not in dispute. So far as pertinent to the solution of the sole legal issue presented, these facts may be tersely summarized. In 1906, J. H. Sloan, late a resident of Spartanburg, South Carolina, died testate and by his will, duly admitted to probate in Spartanburg County, South Carolina, bequeathed, along with other assets, 74 shares of the capital stock of the American National Bank of Spartanburg to the Southern Trust Company as trustee "to hold the said estate and pay over the income as herein directed." Such trustee retained this stock in the American National Bank until 1931, when the American National Bank and the First National Bank, both national banking associations operating in the City of Spartanburg, duly consolidated in compliance with the provisions of Section 33, 12 U.S.C.A., under an agreement which gave to each stockholder of the American National Bank 2½ shares, par $50, in the consolidated bank and to each stockholder of the First National Bank one share, $50 par, in the consolidated bank, for each share, $100 par, theretofore held by him in the First National Bank. The consolidated bank functioned under the name, First National Bank of Spartanburg, South Carolina.

When notified of the consolidation, the trustee of the estate involved did not dissent therefrom or take away any steps to secure an appraisal of its stock owned in the American National Bank. After the consolidation became effective, the trustee accepted and received 185 shares of the capital stock of the consolidated bank pursuant to the terms of the consolidation. This stock was duly registered in the name of the trustee and continued so registered until June 25, 1932, when the consolidated bank suspended. Following such suspension, the Comptroller of the Currency levied a one-hundred per cent. assessment against the stockholders of the bank. When this assessment was not paid by the immediate trust, this action was instituted. Joined as defendants were the trustees of said estate as well as the beneficiaries thereof.

It is conceded by both the plaintiff and the defendants that these facts present but a single legal issue. Such issue, as stated in the brief of the defendants, is: "Did Southern Trust Company, as trustee of the Estate of J. H. Sloan, legally acquire title to any stock in the consolidated bank, so as to make the estate liable for the super-added stockholders' liability?" Expressed more directly, the clear-cut question herein is: Was the trust estate herein a stockholder in the said First National Bank at its suspension?

The conclusion seems inescapable that the trust estate was a stockholder in the said First National Bank at its suspension and is liable to the assessment levied against the 185 shares of stock in such bank registered in its (the trust estate's) name at the closing of the bank. The trust estate originally received from its settlor 71 shares of stock in the American National Bank. That stock it held subject to all the provisions of the National Banking Act, 12 U.S. C.A. § 21 et seq., which constitutes "by itself a complete system for the establishment and government of national banks." Cook County National Bank v. United States, 1882, 107 U.S. 445, 448, 2 S.Ct. 561, 564, 27 L.Ed. 537. All the terms of that Act are to be read into the ownership of said stock by the trust estate and must be in-

cluded within the conditions of that ownership as originally imposed by the trust instrument from which the trust derives its powers. Included among the terms of such Act, to which the trust estate's ownership was subject, was Section 33, 12 U.S.C.A., by virtue of which national banks may be duly consolidated. When national banks are being consolidated under such Section, any stockholder, wishing to avoid becoming a stockholder in the consolidated bank, must within due time dissent from the proposed consolidation. Absent such dissent, all stockholders of the consolidating banks became stockholders of the consolidated banks and liable to the contingent superadded stockholders' liability as such. Thus, in Hiatt v. Peddy, 5 Cir., 1934, 73 F.2d 235, 236, the Court, speaking of this Section 33 of the National Banking Act, said:

"A shareholder who does not vote for a consolidation, which nevertheless is effected, 'may give notice to the directors of the association in which he is interested within twenty days from the date of the certificate of approval of the comptroller that he dissents from the plan of consolidation as adopted and approved, whereupon he shall be entitled to receive the value of the shares so held by him.' 12 U.S.C.A. § 33. *Dissent is the only method the law provides whereby a stockholder of a consolidating bank may avoid being bound by the plan of consolidation.* All other methods of withdrawal are precluded, not in so many words, but by necessary implication. In re Buist's Estate, 297 Pa. 537, 147 A. 606; Littrell v. Craig (D.C.) 1 F.Supp. 491. In the plan of consolidation here alleged, Peddy was put to his election to dissent and take the value of his old stock or to accept for the old new stock of the consolidated bank. *The statute cannot reasonably be so construed as to leave in doubt the question who are and who are not shareholders of a consolidated bank. It adopts the simple method of providing in effect that all shareholders, except those who promptly dissent, give their consent.*"

In Roach v. Stastny, 7 Cir., 1939, 104 F. 2d 559, 562, a stockholder in a national bank, formed by a consolidation consummated under Section 33, sought to defeat the assessment levied against stock registered in his name on the ground that the consolidation did not bind him. Dismissing such contention, the Court, after quoting with approval from Hiatt v. Peddy, supra, added the following paragraph: "It is true that in that case the shareholder did nothing to manifest his dissent from the plan, whereas in the case at bar he did attempt to withdraw, but without complying with the requirements for effective withdrawal. We think nothing less is of any avail to him. Abortive notice to the consolidating bank, conversations with various individuals connected with the banks, written notice to the Comptroller of the Currency of some vague objections to the management of the consolidating bank, none of these constituted the necessary notice of dissent provided for by the statute. In the absence of such notice, the stockholder remains such upon consolidation of the association in which he is interested with other associations. That no certificate of stock in the consolidated bank was ever issued to him, and that there was no proof that his name appeared on its books is immaterial since there is no question about the facts that he was a shareholder in the old and that he did not take the proper steps to stay out of the new."

■ The same result follows, whether a natural person or a trust estate is concerned. Section 66, 12 U.S.C.A., in fixing the terms under which stock in trust may be held in national bank and the obligations attaching thereto, puts it that: "Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable *in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name.*" (Italics added)

It follows, therefore, that when the trustee of the trust estate herein did not dissent from the consolidation of the American National Bank and the First National Bank within the required time, such trust estate, by operation of law, became a stockholder in the consolidated bank. It became such a stockholder by reason of the provisions of the National Banking Act, which constituted an integral incident of the trust estate's initial ownership of stock in the American National Bank. Any other result would nullify the manifest purpose of Section 33 of the National Banking Act.

■ It is the basic contention of the defendants, though, that this case is controlled by the law of South Carolina (citing Erie Railroad Co. v. Tompkins, 1938, 304 U.S.

64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487) and that under such law, the trustee herein was without authority to change any investments in the trust estate, that any change of investment sought to be made by it is void, and that an exchange of stock in a bank consolidation by it was a change of investment. Bass v. Adams, 1931, 163 S.C. 381, 161 S.E. 697; Rivers v. Stevenson, 1933, 169 S.C. 422, 169 S.E. 135, 89 A. L.R. 766; and Hood v. Cannon, 1935, 178 S.C. 94, 182 S.E. 306, are cited in support of the statement of the law of South Carolina. Neither premise of such contention appears to me to be tenable or sound.

The rights and liabilities attaching to stockholders in national banks under a consolidation had under the National Banking Act involves a decision of a federal, not a state, question. Any action, involving a construction of the terms of the National Banking Act, is determinable by federal and not state law. A recent illustration of this principle is Deitrick v. Greaney, 1940, 60 S.Ct. 480, 485, 84 L.Ed. ——. In that case, the validity of the defense of want of consideration to a suit filed to recover on a note given to conceal the national bank's ownership of its own stock was involved. It was earnestly argued that such defense should be tested in the light of the local law. In answer to this argument, Mr. Justice Stone, speaking for the Court, said: "'A point much discussed in brief and argument, upon the assumption that local law will guide our decision, see Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is whether by Massachusetts law respondent is precluded from setting up the illegality of the transaction as a defense to his note. But it is the federal statute which condemns as unlawful respondent's acts. The extent and nature of the legal consequences of this condemnation though left by the statute to judicial determination, are nevertheless to be derived from it and the federal policy which it has adopted, see Board of Commissioners of Jackson County, Kan., v. United States, 308 U.S. [343], 60 S.Ct. 285, 84 L.Ed. ——, decided December 18, 1939, and cases cited. We have recently held that the judicial determination of the legal consequences which flow from acts condemned as unlawful by the National Bank Act involves decision of a federal, not a state question. Awotin v. Atlas Exchange National Bank [295 U.S. 209, 55 S.Ct. 674, 79 L.Ed. 1393], supra.'"

Again, in Seabury v. Green, 1935, 294 U.S. 165, 55 S.Ct. 373, 375, 79 L.Ed. 834, 96 A.L.R. 1463, reversing 173 S.C. 235, 175 S.E. 639, the defendant, in an action filed to recover a stock assessment on national bank stock passing successively to executors and a guardian, urged "that no federal question is [was] involved." In repudiating such argument, the Court tartly remarked: "To the extent the opinion implies that liability of stockholders of national banks is a creature of or depends upon a statute [or, we may add, decision] of South Carolina the assumption is so plainly without foundation as to suggest that it must have been inadvertently made. The court's ruling that the estate is not liable for the assessment necessarily depends upon its construction of 12 U.S.C.A. section 66."

The defendants attempt to find a basis for a contrary conclusion in Pufahl v. Parks, 1936, 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133. The cited authority is not pertinent. It involved the application of a state statute of limitations by way of bar to the right of recovery upon a stock assessment. In it, the Court held, not that the state law determined the construction of the federal statutes imposing substantive liability for stock assessments, but simply controlled "the time for bringing actions to enforce liabilities for stock assessments." See, Van Dyke v. Reich, D.C.Pa., 1939, 27 F.Supp. 436, 437. This action involves a construction of a federal statute under which substantive rights are asserted and not a state statute of limitations.

Nor, for that matter, are the state decisions cited by the defendants in point. None of those decisions dealt with consolidation of national banks, carried out pursuant to the applicable federal statute, or the rights and liabilities flowing therefrom. In Bass v. Adams, supra, and Hood v. Cannon, supra, a national bank had consolidated with a state bank, under authority of a state statute, into a consolidated state bank. In Rivers v. Stevenson, supra, a consolidation of two state banks into a consolidated state bank was under review. Contrary to the construction of the federal statute, the state statute, under which all three consolidations were consummated, was construed, not to impress automatically on the stockholders of the consolidating banks the status of stockholders in the consolidated bank, but was held to mean that the stockholders of the consolidating banks did not become stockholders in the con-

solidated bank until they signified their intention so to do affirmatively. Rivers v. Stevenson, supra; Rivers v. Buchanan, 1933, 169 S.C. 428, 169 S.E. 137. Unquestionably, the construction of an entirely different state statute will not control this Court in the construction of a federal statute.

■ Without regard to the state decisions, though, the defendants assert that no liability could accrue against the trust estate under repeated federal decisions. The authorities, upon which the defendants rely for this argument, dealt with purchases of national bank stock by other national banks or state corporations inhibited by law from acquiring bank stock. First National Bank of Concord v. Hawkins, 1899, 174 U.S. 364, 19 S.Ct. 739, 43 L.Ed. 1007; California National Bank v. Kennedy, 1897, 167 U.S. 362, 17 S.Ct. 831, 42 L.Ed. 198; Kohn v. Dixon, 4 Cir., 1938, 100 F.2d 306; Reconstruction Finance Corp. v. Rawlings, 5 Cir., 1935, 76 F.2d 566; Schofield v. Goodrich Bros. Banking Co., 8 Cir., 1899, 98 F. 271, and similar cases. These cases are not in point. The initial acquisition of national bank stock by the trust estate herein in the American National Bank was admittedly legal. Its acquisition did not transgress the terms of the trust instrument itself but was in fulfillment thereof. It is clearly different from the illegal acquisition of national bank stock by a national bank or a state corporation in defiance of law. Nor was the subsequent passing of that stock into stock of the consolidated bank in violation of law but merely a compliance with the federal statute providing for the consolidation of national banks. The situation is somewhat analogous to that presented when a national bank, after making a valid loan on bank stock, acquires such stock in protection of its pledge. It is held in that case that, while an initial purchase or investment in such stock would be ultra vires, the acquisition of such stock in exercise of a valid power to lend money on stock is legal and will constitute the national bank the legal owner of stock in another national bank. Germania Nat. Bank v. Case, 1878, 99 U.S. 628, 25 L.Ed. 448; Williams v. Merchants' Nat. Bank, D.C.Minn., 1930, 42 F.2d 243; Fulton v. National Bank, 1901, 26 Tex.Civ. App. 115, 62 S.W. 84. Of course, if the original taking of stock in the American National Bank by the trust estate could be validly impugned, this contention would be sound; but such is not the contention of the defendants.

■ Moreover, when two national banks are consolidated under the National Banking Act, it cannot be said that a new investment in a new and independent corporate venture is made, by an exchange of stock made under the plan of consolidation. Such consolidation does not create a new and independent bank. As stated in a leading text, "The purpose of the federal statutes as to consolidations of national banks is to continue the identity of the old national bank in the bank into which it is consolidated." 1 Zollmann, Banks and Banking, Perm.Ed., 1936, § 286, p. 255. In Petition of Worcester County National Bank, 1928, 263 Mass. 394, 161 N.E. 797, 798, the Court, speaking to a consolidation had under the National Banking Act and the effect thereof, said: "The certificate of approval of the consolidation by the comptroller of the currency is in no sense a new or modified charter. It is no more than a formal expression by the comptroller of the currency of his approval of the consolidation. The corporate identity of the national bank has continued unaffected by anything in connection with the consolidation. Its corporate existence under the same charter, subject to the same laws, and owing fealty to the same jurisdiction has persisted without change. Its financial resources may have been increased or diminished by the addition of the assets of the trust company and the assumption of its debts, but its obligations and duties, not arising out of the consolidation, abide in full force and effect as if there had been no consolidation."

Furthermore, there is considerably more justification for the argument of a new investment when a national bank is consolidated into a state bank under a state statute, as was the case in Bass v. Adams, supra. In such a case, necessarily a new corporate venture is engaged in. He who originally invested in a national bank, created by authority of Congress and subject to regulation as such, ceases to be a stockholder in a national bank and is to be brought into a new and separate corporation, owing its corporate life to another sovereignty, subject to different regulations, and having a new charter. No such condition arises out of a consolidation when a national bank is consolidated with another consolidated bank.

The argument of the defendants, if followed to its logical conclusion, would result in an anomalous situation. The defendants concede the validity of the trust estate's ownership of stock in the American National Bank. They admit the legality of the consolidation. They confess that the trust estate, through its trustee, did not dissent from the plan of consolidation and thereby gave the consolidated bank no opportunity validly to substitute another stockholder in the stead of the trust estate in the consolidated bank. While the stock of the trust estate could not pass to another because of failure to dissent to the consolidation, the defendants argue that it could not attach to the trust estate. Bank stock cannot simply vanish. Some one had to own it. To hold that the trust estate did not own it would amount to the conclusion that such stock merely disappeared contemporaneous with the consolidation, that the trust estate was divested without due process of law of its stock in the American National Bank. Such illogical result may not be countenanced. To quote the language of the Court in Thomas v. Commonwealth Trust Co., D.C.Pa., 1933, 2 F.Supp. 654, 655: "The purpose of the statute (section 64, supra) is manifest. Congress desired to protect creditors of national banks, and to strengthen such banks with the public by imposing upon them this liability of the shareholders as a safeguard. If certain stockholders are to be free from liability for reasons such as advanced in the instant case, the purpose of Congress would be seriously affected."

For the reasons stated, I conclude that the trust estate herein was a stockholder of the First National Bank of Spartanburg at its suspension and is liable to judgment for the assessment levied against the 185 shares of the capital stock of said bank registered in its name at the bank's suspension.

Subsequent to the commencement of this action, Simpson F. Cannon was duly substituted as trustee of the trust estate herein by succession to the defendant trustee, Southern Trust Company. Such substituted trustee was by appropriate order in this proceeding made a party hereto and has defended the action on behalf of the trust estate. Under Section 66, 12 U.S.C.A., the judgment to be entered herein will be entered against such trustee in his capacity as such and will bind the trust estate and all assets and properties.

It is, therefore, ordered, adjudged and decreed, that the plaintiff do have judgment against the defendant Simpson F. Cannon, as trustee under the will of J. H. Sloan, deceased, in the sum of nine thousand, two hundred fifty and no/100 ($9,250) dollars, with interest from September 12, 1932, at the legal rate and with the costs of this action.