## CANNON et al. v. DIXON.

### No. 4682.

Circuit Court of Appeals, Fourth Circuit.

Nov. 18, 1940.

J. Neville Holcombe, of Spartanburg, S. C. (A. E. Tinsley, Perrin & Tinsley, Evans, Galbraith & Holcombe, and Horace L. Bomar, Jr., all of Spartanburg, S. C., on the brief), for appellants.

Donald Russell, of Spartanburg, S. C., for appellee.

Before PARKER, · DOBIE, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action instituted in October, 1932, in the District Court of the United States for the Western District of South Carolina, by the appellee, C. H. Dixon, as receiver of the First National Bank of Spartanburg, South Carolina, here referred to as the plaintiff, against appellant, Simpson F. Cannon, as trustee of the estate of J. H. Sloan, deceased, and certain beneficiaries of the estate, here referred to as the defendants.

The object of the action was to recover from the trust estate a stockholders' liability assessment made by the Comptroller of the Currency on 185 shares of stock in the insolvent First National Bank of Spartanburg.

The cause was heard by the judge below in March, 1940, without a jury upon an agreed stipulation of facts. After argument the judge filed a written opinion finding for the plaintiff. From the judgment for $9,250, with interest, entered in accordance with the findings in the opinion, the defendants brought this appeal.

The facts were summarized in the judge's opinion as follows [32 F.Supp. 626, 627]: ·

"In 1906, J. H. Sloan, late a resident of Spartanburg, South Carolina, died testate and by his will * * * bequeathed, along with other assets, 74 shares of the capital stock of the American National Bank of Spartanburg to the Southern Trust Company as trustee 'to hold the said estate and pay · over the income as herein directed.' Such trustee retained this stock in the American National Bank until 1931, when the American National Bank and the First National Bank, both national banking associations operating in the City of Spartanburg, duly consolidated in compliance with the provisions of Section 33, 12 U.S.C.A., under an agreement which gave to each stockholder of the American National Bank 2½ shares, par $50, in the consolidated bank and to each stockholder of the First National Bank one share, $50 par, in the consolidated bank, for each share, $100 par, theretofore held by him in the First National Bank. The consolidated bank functioned under the name, First National Bank of Spartanburg, South Carolina.

"When notified of the consolidation, the trustee of the estate involved did not dissent therefrom or take any steps to secure an appraisal of its stock owned in the American National Bank. After the consolidation became effective, the trustee accepted and received 185 shares of the capital stock of the consolidated bank pursuant to the terms of the consolidation. This stock was duly registered in the name of the trustee ·and continued so registered until June 25, 1932, when the consolidated bank suspended. Following such suspension, the Comptroller of the Currency levied a one hundred per cent. assessment against the stockholders of the bank. When this assessment was not paid by the immediate trust, this action was instituted. Joined as defendants were the trustees of said estate as well as the beneficiaries thereof."

Subsequently Simpson F. Cannon was substituted as trustee in the place of the Southern Trust Company.

Only one question is presented for consideration on this appeal. Did the trustee of the estate of J. H. Sloan, legally acquire title to the stock upon which the assessment was made so as to make the trust estate· liable for the superadded stockholders' liability?

It is the contention of the defendants that under the South Carolina law the trustee could legally change investments only by provision of the trust instrument or by appropriate court authority; that the change brought about in the bank stock held by the trust in the bank consolidation was a change of investment without authority and consequently illegal; and that the decisions of the highest court of South Carolina are controlling on this point.

The plaintiff contends that there was no actual change of investment brought about by the consolidation of the banks; that the construction of a federal statute was involved; that only federal decisions were controlling; and that even should it be held that South Carolina law controlled, the estate is liable for the assessment.

■ In his able and exhaustive opinion the learned judge below reviews numerous decisions relied upon by both parties and reached, in our opinion, the proper conclusion, that the estate was a stockholder in the insolvent bank and is liable for the assessment.

■ As to the contention that under the state law the trust estate did not become a stockholder in the bank we are of the opinion that the merger of the banks was not such a change in the investment as would bring it within the South Carolina Rule that "the change of the investment of a trust fund can be made only by the provision of the instrument creating the trust— or by order of court." Bass et al. v. Adams et al., 163 S.C. 381, 161 S.E. 697, 704. The consolidation of the banks was brought about under Section 33 of the National Banking Act, 12 U.S.C.A., and the great weight of authority is to the effect that in a consolidation of two national banks the identity of the banks is continued in the consolidated bank.

"The purpose of the Federal statutes as to consolidations of national banks is to continue the identity of the old national bank in the bank into which it is consolidated." 1 Zollman, Banks and Banking, 1936, § 286, p. 255. See, also, Petition of Worcester County National Bank, 263 Mass. 394, 161 N.E. 797; Commissioner of Banks v. Chase Security Corporation, 298 Mass. 285, 10 N.E.2d 472.

The failure of the trustee to object to the merger and the acceptance of the stock in the new bank did not constitute a new investment but simply continued an investment already held by the estate.

Section 66 of the Banking Act, 12 U.S.C.A., provides: "Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

The authorities relied upon by the defendants, Bass v. Adams, supra; Rivers et al. v. Stevenson, 169 S.C. 422, 169 S.E. 135, 89 A.L.R. 766; and Hood v. Cannon, 178 S.C. 94, 182 S.E. 306, involve bank mergers under a state statute the construction of which is passed upon. We do not regard these decisions as controlling because here the merger of two national banks was made under a federal statute with different provisions.

■ We are also of the opinion that the judge below was right in his conclusion that the question of the liability of stockholders of national banks is to be determined by federal and not state law.

The national banking system is the creation of federal statutes and to allow these statutes to be construed according to the frequently conflicting laws of the several states would be unthinkable. As was said by the Supreme Court in Seabury v. Green, 294 U.S. 165, 55 S.Ct. 373, 375, 79 L.Ed. 834, 96 A.L.R. 1463: "To the extent the opinion implies that liability of stockholders of national banks is a creature of or depends upon a statute of South Carolina the assumption is so plainly without foundation as to suggest that it must have been inadvertently made. The court's ruling that the estate is not liable for the assessment necessarily depends upon its construction of 12 U.S.C.A. section 66."

The defendants rely upon the decision in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, in support of their contention that state law controls. In discussing this question, Mr. Justice Stone said, in Deitrick, Receiver, v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 485, 84 L.Ed. 694: "A point much discussed in brief and argument, upon the assumption that local law will guide our decision, see Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is whether, by Massachusetts law respondent is precluded from setting up the illegality of the transaction as a defense to his note. But it is the federal statute which condemns as unlawful respondent's acts. The extent and nature of the legal consequences of this condemnation though left by the statute to judicial determination, are nevertheless to be derived from it and the federal policy which it has adopted, see Board of [County] Commissioners of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313, decided December 18, 1939, and cases cited. We have recently held that the judicial determination of the legal consequences which flow from acts condemned as unlawful by the National Bank Act involves decision of a federal, not a state question. Awotin v. Atlas Exchange National Bank [295 U.S. 209, 55 S.Ct. 674, 79 L.Ed. 1393], supra."

The defendants rely upon Pufahl, Receiver, v. Estate of Elvira J. Parks, 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133, and cases there cited, to support their contention that local and not federal law should control but, as pointed out by the judge below in his opinion, there is a sharp distinction between the construction of a federal statute imposing liability on a stockholder in a national bank and the construction of a state statute limiting the time for bringing an action to enforce such liability. In the one case substantive right, and in the other a remedial right is involved.

The trust estate was a stockholder in the bank at the time of its suspension and is liable for the assessment.

Affirmed.